996 P.2d 292

STATE of Idaho, Plaintiff–Respondent,

v.

Andrea C. WRIGHT, Defendant–
Appellant.

No. 24669.

Supreme Court of Idaho,
Twin Falls, November 1999 Term.

Feb. 25, 2000.

Marilyn B. Paul, Jerome, for appellant.

Hon. Alan G. Lance, Attorney General; Rebekah A. Cude, Deputy Attorney General, Boise, for respondent. Rebekah A. Cude argued.

SILAK, Justice.

Appellant Andrea C. Wright (A.Wright) appeals the district court's denial of a motion to suppress evidence, from the sentence imposed, and the denial of a Rule 35 motion for reduction of sentence. We affirm.

## I.

## FACTS AND PROCEDURAL BACKGROUND

### A. Factual Background

On September 5, 1997, A. Wright was a passenger in a pick-up truck driven by her husband, Eugene W. Wright (E.Wright), when they were stopped by Jerome County Sheriff's Deputy, Jason Pietrzak (Pietrzak), for E. Wright's failure to signal while making a turn. Upon stopping the vehicle, Pietrzak approached the driver's side and asked E. Wright for his driver's license, registration and proof of insurance. E. Wright claimed to have lost his wallet, which he stated contained $700.00. E. Wright then found the registration, and Pietrzak asked E. Wright to write down his birth date on the registration card. At this time, Pietrzak noticed a large knife on the dashboard of the truck and instructed E. Wright not to reach for any weapons. Pietrzak instructed E. Wright to remain in his vehicle and returned to the

patrol car to call for backup. While waiting for backup to arrive, Pietrzak discovered that E. Wright's driving privileges had been suspended. Deputy Corder (Corder) arrived, and E. Wright was subsequently arrested for driving without privileges. While conducting a search incident to the arrest, Pietrzak found three pocketknives on E. Wright's person.

As Pietrzak returned to the pick-up truck after E. Wright's arrest, A. Wright voluntarily exited the truck and began walking toward the back of the truck carrying a plastic bag of vegetables and a black purse. A. Wright placed the bag of vegetables in the back of the truck and began to clutch the purse. When both deputies asked A. Wright if they could look in the purse, she refused, became uncooperative and nervous. In referencing her purse, A. Wright stated, "I've got some weapons in there, don't touch me." At that point, Pietrzak stated, "we're going to handcuff you for our safety and your safety." A. Wright told the deputies that she would get the weapons out of the purse for them, and started to reach into her purse. Pietrzak took the purse from A. Wright and Corder placed her in handcuffs.

A search of the purse by Pietrzak revealed a handgun; several pocket knives; 46.4 grams of methamphetamine packaged in small, individual containers; five marijuana cigarettes; a plastic bag containing 5.4 grams of marijuana; and E. Wright's wallet, which contained $700 in cash and what appeared to be a ledger.

## B. Procedural Background

On September 8, 1997, A. Wright was charged with trafficking methamphetamines. On November 6, 1997, A. Wright moved to suppress the evidence obtained in the search of the purse and all statements made by her. On December 3, 1997, the district court issued an order denying the motion to suppress. A. Wright later entered a Rule 11 conditional guilty plea to trafficking in methamphetamine, preserving her right to appeal the district court's order denying her motion to suppress. The district court sentenced A. Wright to a unified twelve-year sentence with five years fixed. A. Wright subsequent-ly filed a Rule 35 motion for reduction of sentence, which was denied. A. Wright appeals the denial of her motion to suppress and the denial of her Rule 35 motion.

## II.

## ISSUES ON APPEAL

The appellant presents the following issues on appeal:

A. Whether the district court erred in denying A. Wright's motion to suppress.

B. Whether the district court abused its discretion in sentencing A. Wright.

C. Whether the district court abused its discretion in denying A. Wright's Rule 35 motion.

## III.

## STANDARD OF REVIEW

■■■ The standard of review of a district court's denial of a motion to suppress is two-fold. The appellate court will not overturn the trial court's factual findings unless they are clearly erroneous. However, the application of constitutional standards to the facts found by the district court is given free review. *See State v. DuValt,* 131 Idaho 550, 552–53, 961 P.2d 641, 643–44 (1998); *State v. Bush,* 131 Idaho 22, 28, 951 P.2d 1249, 1255 (1997).

■■■ In reviewing whether the district court abused its discretion in sentencing, this Court "conducts an independent review of the record, focusing on the nature of the offense, the character of the offender, and the protection of the public interest." *State v. McAway,* 127 Idaho 54, 61, 896 P.2d 962, 969 (1995). The Court must consider: (1) the protection of society; (2) deterrence of the defendant and others; (3) the possibility of the defendant's rehabilitation; and (4) punishment or retribution for the defendant in determining whether the sentence is excessive under any reasonable view of the facts. *Id.* However, the Court will not substitute its view for that of the sentencing judge if the situation is such that reasonable minds might differ. *See State v. Newman,* 124 Idaho 415, 418, 860 P.2d 618, 621 (1993).

The Court also considers the fixed portion of a sentence imposed under the Unified Sentencing Act to be the term of confinement for the purpose of appellate review. *Id.* A clear abuse of discretion is shown only if the defendant establishes that, considering the sentencing objectives, the sentence is excessive under any reasonable view of the facts. *See State v. Broadhead,* 120 Idaho 141, 145, 814 P.2d 401, 405 (1991), *overruled on other grounds, State v. Brown,* 121 Idaho 385, 825 P.2d 482 (1992).

 In reviewing a district court's denial of a motion for reduction of sentence under I.C.R. 35, this Court examines the record before it, including evidence presented in connection with the motion to determine whether the district court abused its discretion in denying the leniency requested. *See State v. Wersland,* 125 Idaho 499, 504, 873 P.2d 144, 149 (1994).

## IV.

## ANALYSIS

**A. The District Court Properly Denied A. Wright's Motion To Suppress On The Basis That The Search Of Her Purse Was Lawful Under *Terry v. Ohio.***

We affirm the district court's order denying A. Wright's motion to suppress on the basis that the warrantless search of her purse was legal as part of a investigatory *Terry* stop and frisk.

In *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court acknowledged the right of police to stop and question an individual absent sufficient probable cause to make an arrest. 392 U.S. at 30, 88 S.Ct. at 1884, 20 L.Ed.2d at 911. This *Terry* detention standard has been adopted in Idaho and has been explained by this Court as follows:

> An individual who is accosted by a police officer and has his freedom to walk away restrained has been seized. Not all seizures of the person need be justified by probable cause to arrest for a crime; a police officer may, in appropriate circumstances and in an appropriate manner, detain a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest. Such a seizure is justified under the Fourth Amendment if there is an articulable suspicion that the person has committed or is about to commit a crime.

*State v. Rawlings,* 121 Idaho 930, 932, 829 P.2d 520, 522 (1992) (citations omitted).

 If the police officer's suspicions are "confirmed or further aroused, the stop may be prolonged and the scope of the investigative stop enlarged." *State v. Johns,* 112 Idaho 873, 877, 736 P.2d 1327, 1331 (1987). Thus, this Court has concluded that the " 'proper inquiry is to look at the totality of the circumstances and ask whether the facts available to the officers at the time of the stop gave rise to a reasonable suspicion, not probable cause to believe, that criminal activity may be afoot.' " *DuValt,* 131 Idaho at 553, 961 P.2d at 644 (quoting *State v. Gallegos,* 120 Idaho 894, 897, 821 P.2d 949, 952 (1991)). This standard is less demanding than a probable cause standard. *Id.*

 Once a lawful stop has been made, an officer may conduct a limited self-protective pat down search of a detainee and remove anything that feels like a weapon. *See Johns,* 112 Idaho at 876–77, 736 P.2d at 1330–31. "Such a search is allowed to permit a police officer to conduct the inquiry without fear of violence being inflicted upon the officer's person." *Rawlings,* 121 Idaho at 933, 829 P.2d at 523. Whether an officer may reasonably justify such a search is evaluated in light of the "facts known to the officers on the scene and the inference of the risk of danger reasonably drawn from the totality of the circumstances." *State v. Simmons,* 120 Idaho 672, 676, 818 P.2d 787, 791 (Ct.App. 1991). Additionally, based upon the specific facts of the situation and the reasonable inferences drawn therefrom, police officers are entitled to engage in the use of handcuffs in limited investigatory stops to maintain their safety:

> If the use of the handcuffs is a reasonable precaution to ensure the officers' safety, the use of the handcuffs is warranted during the limited stop. If the investigative

detention becomes unreasonable, the detention is transformed into an arrest. In determining if the detention becomes unreasonable, the court is to consider: (1) the duration of the invasion imposed by the additional restriction; and (2) the law enforcement purposes served.

*DuValt*, 131 Idaho at 554, 961 P.2d at 645 (citations omitted).

Appellant argues that the search of her purse was illegal and did not fall within the purview of *Terry v. Ohio* because the evidence did not indicate a basis upon which the deputies had a reasonable suspicion of criminal activity. To support this assertion, A. Wright states that Pietrzak's testimony at the suppression hearing conflicted with hers with respect to whether she told him she had weapons in her purse before or after she was handcuffed. This argument is unpersuasive for two reasons.

First, A. Wright does not directly challenge any of the factual findings made by the district court. Rather, she makes assertions of fact contrary to the findings made by the district court with respect to whether she told the officers her purse contained weapons, instead of contending or demonstrating that the findings of the trial court are clearly erroneous. The district court had a special opportunity to judge the credibility of both Pietrzak and A. Wright, and to determine the weight to be given their testimony and reasonable inferences to be drawn from the evidence. *See Whiteley v. State*, 131 Idaho 323, 326, 955 P.2d 1102, 1105 (1998); *Stuart v. State*, 127 Idaho 806, 813, 907 P.2d 783, 790 (1996). The district court clearly found Pietrzak's testimony more credible than A. Wright's. In fact, most of A. Wright's responses during the suppression hearing when asked about her statements regarding weapons were that she did not recall. The court found the State's evidence, Pietrzak's testimony, the arrest and offense reports, and the tape recording from the scene much more credible and weighty than A. Wright's "I don't recall" responses. Moreover, at the beginning of A. Wright's direct examination by her attorney, she stated that she told the deputies she had a knife and that this occurred before she was handcuffed. Not until

later, upon almost argumentative questioning by her own attorney, did A. Wright change her testimony to reflect that she mentioned the knife after she was handcuffed. Therefore, based upon Pietrzak's arrest report, the tape recording, and A. Wright's testimony, we hold that the district court's findings are supported by substantial and competent evidence and will not disturb them on appeal.

Second, under the totality of the circumstances in this case, Pietrzak had a reasonable, articulable suspicion that criminal activity may be afoot, and in order to ensure his safety and that of A. Wright, the search of her purse was lawful under *Terry*. The totality of the circumstances in this case includes all facts known to the deputies from the time of the traffic stop forward. The initial stop was made at night on a rural road. A knife was on the dashboard of the vehicle when Pietrzak first approached, and weapons were found on E. Wright when he was arrested. Immediately after E. Wright was placed in the patrol car, A. Wright emerged from the pick-up truck through the driver's side and began acting unusually agitated and clutching her purse. A. Wright became even more volatile as the encounter developed. Under these facts, a reasonable person could believe that criminal activity may be transpiring. Next, when Pietrzak asked A. Wright if she had weapons in her purse, she told him she had a knife in her purse and attempted to reach into her purse. This statement confirmed to Pietrzak that A. Wright was armed and possibly dangerous. Because the evidence presented indicated that the deputies reasonably believed their safety was in question, we find the search of the purse was reasonable and lawful.

The use of handcuffs in this case was also reasonable and lawful under the totality of the circumstances. The fact that an individual is handcuffed and placed in a patrol car during an investigative stop does not automatically transform the encounter into an arrest requiring probable cause. Strong but reasonable measures to insure the safety of the officers may be taken in such a case. *See State v. Johns*, 112 Idaho at 878, 736 P.2d at 1332. Here, the deputies placed A. Wright in handcuffs only after she

told them she had a knife in her purse and started to reach into her purse to retrieve it. Therefore, we find the district court was correct in concluding that, under the circumstances, the handcuffs were a reasonable means of conducting the investigatory stop.

The State argues that although the district court was correct in ruling that the search of A. Wright's purse was valid under *Terry v. Ohio*, the better analysis would be that the search of the purse was a valid search incident to the lawful arrest of E. Wright. Specifically, the State argues, relying on *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), that an officer may search the passenger compartment and any container found in it incident to the lawful arrest of one of its occupants. In *State v. Newsom*, 132 Idaho 698, 979 P.2d 100 (1998), this Court recently held that under *Belton*, a search of another occupant of an automobile is not authorized merely because the other occupant was there when the arrest of the driver was made. The Court noted that under *Belton*, " 'the lawful custodial arrest justifies the infringement of any privacy interest the arrestee may have,' " but does not authorize the search of a passenger based merely on the arrest of the driver. *Id.* at 700, 979 P.2d at 102 (quoting *Belton*, 453 U.S. at 461, 101 S.Ct. at 2864, 69 L.Ed.2d at 775). While it does appear that A. Wright is correct in arguing that the warrantless search of the purse in this case did not fall within the search incident to a lawful arrest exception under *Belton*, our decision in *Newsom* does not preclude the search of the purse under a *Terry* stop and frisk rationale. Accordingly, we affirm the district court's decision to deny A. Wright's motion to suppress.

### B. The District Court Did Not Abuse Its Discretion In Sentencing A. Wright Or In Denying Her Motion For Reduced Sentence.

A. Wright argues that the district court abused its discretion in sentencing and in denying her Rule 35 motion for reduction of sentence. She argues that her sentence of five years fixed is excessive because she never had the benefit of substance abuse treatment while in custody, and that while she was placed at a community work center prior to parole for a previous offense, she never had the benefit of serving a retained jurisdiction with the accompanying program. We find that A. Wright has not met her burden of establishing an abuse of discretion by the district court.

A. Wright pled guilty to trafficking in excess of 28 grams pursuant to a plea agreement in which the State recommended the sentence that was ultimately imposed. Normally, this is an offense which carries a mandatory minimum fixed term of three years. The district court reviewed the four sentencing objectives and the factors of I.C. 19–2521, including the nature of the crime and the character of the defendant. The court then evaluated those objectives and factors contained in the pre-sentence investigation report (PSI). The PSI indicated that A. Wright had two prior misdemeanor convictions and was convicted in 1988 on four felony counts for delivery of cocaine, marijuana and methamphetamine. When arrested in the instant matter, A. Wright was in possession of 46.4 grams of methamphetamine and 10.8 grams of marijuana. She was also in possession of several knives and a handgun. The PSI also indicated that A. Wright was unemployed, with no significant employment other than babysitting jobs since at least 1990, and that she and her husband were vague as to what their assets and liabilities were. This information and the quantity of methamphetamine in A. Wright's possession when arrested, persuaded the district court that A. Wright fit the criteria of I.C. 19–2521(1)(f) concerning a multiple offender or professional criminal. At the sentencing hearing, the court stated:

> A multiple offender you are by definition, because of the previous convictions in Twin Falls and this. I would consider, in my view, a definition of a professional criminal is one who derives some or a substantial— or all of is relative term, but their living from the commission of the criminal act.
>
> . . .
>
> [D]espite how you characterize your involvement or lack thereof, I don't think it's much of a stretch to believe or make an inference that you and your husband were

living on, at least in some part, this drug activity. You were receiving the benefits of this conduct. There is no evidence that you refused to accept any of the benefits of this drug dealing activity.

Faced with this evidence, the court found that A. Wright was a risk to society, as she would likely commit another crime. The sentence imposed was based upon the serious nature of the offense, A. Wright's history of drug-related offenses and her character as established through the PSI and testimony. Therefore, we hold the district court did not abuse its discretion by imposing a sentence of five years determinate and twelve years indeterminate.

▮ A. Wright further argues, for the same reasons previously stated, that the district court abused its discretion in denying her Rule 35 Motion for reduction of sentence. Because A. Wright did not submit new or additional information for the court to consider in support of her Rule 35 motion, we uphold the district court's exercise of its discretion in denying her motion and affirm its finding that the sentence is not unreasonable or excessive.

## V.

## CONCLUSION

We affirm the district court's order denying A. Wright's motion to suppress, the sentence imposed, and the order denying the Rule 35 motion for a reduction of sentence.

Chief Justice TROUT, Justices SCHROEDER, WALTERS and KIDWELL, concur.