No. 98-510

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 94

299 Mont. 230

999 P. 2d 342

STATE OF MONTANA,

Plaintiff and Respondent,

v.

TODD HEATH,

Defendant and Appellant.

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Yellowstone,

The Honorable Diane G. Barz, Judge presiding.

COUNSEL OF RECORD:

**For Appellant:**

Mark Hilario, Attorney at Law, Billings, Montana

**For Respondent:**

Hon. Joseph P. Mazurek, Attorney General; Jennifer Anders,

Assistant Attorney General; Helena, Montana

Dennis Paxinos, Yellowstone County Attorney; Sheila R. Kolar,

Deputy Yellowstone County Attorney, Billings, Montana

Submitted on Briefs: September 2, 1999

Decided: April 13, 2000

Filed:

_____

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1.Todd Heath (Heath) was charged in the Thirteenth Judicial District Court, Yellowstone County, with criminal possession of drugs and drug paraphernalia. Heath pled guilty to the charges and reserved his right to appeal the District Court's denial of his motion to suppress items that were seized from his person pursuant to a warrantless search. We reverse the court's ruling.

¶2.The sole issue on appeal is whether the District Court erred in denying Heath's motion to suppress items found on his person during a pat-down search for weapons.

¶3.The matter was decided by the District Court without an evidentiary hearing on the basis of the facts set forth in the parties' briefs. The undisputed facts recited by the District Court are as follows:

a.,On October 25, 1997, at approximately 10:37 o'clock p.m., Gayle Raymond called the Billings Police Department to report a disturbance at her residence located on the 1100 block of North 25th Street. Officer Cardillo was dispatched to the scene, as well as Officers Longin and Paharik. Raymond had reported that the Defendant, Todd Heath, had been harassing her and that he had threatened her earlier with a gun. She also reported the suspect or suspects were knocking on her door, and that the suspect or suspects' vehicle was parked in the alley behind the residence.

b.Officers Longin and Paharik arrived first. They were advised that the suspect's vehicle was a 1964 white Chevrolet. Officer Longin heard "a commotion" in the direction of the reported vehicle, and then observed it leave the area through the alley. He ran to his patrol car and radioed to Officer Cardillo. Officer Cardillo initiated a stop of the vehicle.

c.Officer Longin arrived just as Officer Cardillo was making the stop. He observed one of the passengers, later identified as Mario Diaz, repeatedly crouching down as if placing or retrieving an item from under the seat and then sitting back upright in the seat. Officer Cardillo also observed this action.

d.Officer Longin approached the vehicle on the driver's side and Officer Cardillo approached it on the passenger side. Other officers arrived on the scene at this time, including Officer Paharik. Officer Paharik had talked with the complainant, Raymond.

e.As he approached the vehicle, Officer Cardillo noticed that passenger Diaz kept leaning forward and his hands would go out of sight as he reached under the seat. He states that he felt threatened by the vehicle occupants' actions. He asked the driver and the passenger to keep their hands in sight.

f.Officer Longin asked the Defendant for his Driver's License and Registration, which he could not produce. Officer Paharik then informed Officers Longin and Cardillo that the Defendant may have a gun because he had allegedly threatened Raymond with a gun a few days prior. The Officers had the Defendant and Diaz exit the vehicle. Officer Cardillo noticed that Diaz was extremely jumpy. He asked Diaz what he had put under the seat, and Diaz replied that he had not put anything under the seat.

g.The Officers then conducted a pat down search for officer safety reasons based on the information that the Defendant may be armed. Officer Longin recovered a small leather bag from the middle inside pocket of the Defendant's coat, and a small glass pipe from his left inside coat pocket. Inside the leather bag was several blue valium tablets. Officer Longin then placed the Defendant [in] handcuffs. Officer Cardillo arrested Diaz upon discovering he had a Warrant out for his arrest.

h.A subsequent search of the vehicle revealed two black bags which were searched for weapons. The bags contained a scale, a piece of butcher paper, 3 bindles, a plastic bag containing valium, zigzag rolling papers, a bag containing marijuana, and a bag containing methamphetamine. Also, a knife was found in the front passenger area.

## *Standard of Review*

¶4.The standard of review of a district court's denial of a motion to suppress is whether the court's interpretation and application of the law are correct. State v. Graham (1995), 271 Mont. 510, 512, 898 P.2d 1206, 1207-08 (citation omitted).

## *Discussion*

¶5.Did the District Court err in denying Heath's motion to suppress items found on his person during a pat-down search for weapons?

¶6.A search without a warrant is per se unreasonable under the Fourth Amendment to the United States Constitution, and Article II, Section 11 of the Constitution of the State of Montana. Both federal and state law recognize certain judicial exceptions to the warrant requirement. *See* State v. McCarthy (1993), 258 Mont. 51, 55, 852 P.2d 111, 113 (citation omitted). Here, the search of Heath was conducted without a warrant and was, therefore, per se unreasonable unless it satisfies one of the judicially recognized exceptions to the warrant requirement. In the District Court, the State contended that the relevant exceptions were search incident to arrest and stop and frisk. The District Court concluded that the search of Heath's person did not come within the search incident to an arrest exception. It found, however, that the search did qualify as a valid stop and frisk search under §§ 46-5-401 et seq., MCA. We therefore review that conclusion to determine whether it is correct.

¶7.Given the following facts, the State argues that the officers were justified in stopping and frisking Heath for weapons: they had just received a call from Heath's ex-girlfriend Gayle Raymond (Raymond) that Heath was parked in an alley outside her residence and was creating a commotion; Heath had harassed her just days earlier with a gun; when the officers arrived at the residence, Heath sped off; and his passenger appeared to be hiding something under the front seat. Under the circumstances, the State contends, the pat-down search was permissible and the drugs and paraphernalia found in the search were lawfully seized under the "plain feel" doctrine. *See* State v. Collard (1997), 286 Mont. 185, 194-96, 951 P.2d 56, 61-63.

¶8.Heath argues that the fact that Raymond reported that he had threatened her with a gun a few days earlier did not give rise to a reasonable suspicion that Heath was armed with a gun on the night in question. Secondly, he contends that even if the officers reasonably suspected that he was armed, the small leather coin purse and glass rod could not have

been reasonably mistaken for deadly weapons.

¶9.The State must satisfy two criteria for a stop and frisk to be valid at its inception: (1) the officer must have objective data from which an experienced officer can make certain inferences; and (2) a resulting suspicion that the occupant of a vehicle was engaged in wrong-doing or was a witness to criminal activity. State v. Stubbs (1995), 270 Mont. 364, 370, 892 P.2d 547, 551, *overruled on other grounds*, State v. Loh (1996), 275 Mont. 460, 914 P.2d 592. The frisk is to search for potential weapons and the officer must suspect the object as a weapon, or if the officer detects other contraband during the pat-down for weapons, its incriminating character must be "immediately apparent." *Stubbs*, 270 Mont. at 371, 892 P.2d at 551-52.

¶10.We agree with the District Court that the officers reasonably suspected that Heath might be armed and thus they were justified in conducting a stop and frisk type search. Even so, Heath contends that the objects recovered could not be reasonably mistaken for deadly weapons. The issue then becomes whether the officers exceeded the permissible scope of the pat-down search.

¶11.The stop and frisk procedure was first enunciated by the United States Supreme Court in Terry v. Ohio, and is defined as "a carefully limited search of the outer clothing of such persons [suspects the officer fears may be armed and presently dangerous] in an attempt to discover weapons which might be used to assault [the officer]." Terry v. Ohio (1968), 392 U.S. 1, 30, 88 S.Ct. 1868, 1884-85, 20 L.Ed.2d 889.

¶12.The District Court observed that although "the objects found on the Defendant were not large, they could have potentially been mistaken for weapons such as small knives. The [District] Court also agrees with the State that although the leather bag itself could not be mistaken for a weapon, it could have contained a weapon."

¶13.Turning first to the small leather coin purse, the District Court's observation that the leather bag itself "could not be mistaken for a weapon" is determinative. As noted above, the officers were justified in conducting a *Terry* stop and frisk search. That is, a carefully limited search of Heath's outer clothing to discover weapons. The District Court, without any record as to what the officer's rationale was for removing and searching the coin purse, concludes that "it could have contained a weapon." We conclude that, under the facts of this case, such a conclusion exceeds the permissible scope of a *Terry* pat-down search. The only fact before the court was that the officers had information that Heath had

a gun a few days earlier. There is nothing in the record indicating that the officer, through "feel" or "touch," had probable cause to believe that the purse was a weapon or that it contained a weapon. There was no basis for the District Court to conclude that the officer was justified in removing and searching a small leather coin purse on the blanket assumption that it could contain a weapon.

¶14. As to the glass pipe, the State invokes the "plain touch" or "plain feel" doctrine from State v. Collard (1997), 286 Mont. 185, 951 P.2d 56. In *Collard*, the officer properly engaged Collard in an investigatory stop based upon a particularized suspicion that he was involved in a robbery. The officer conducted a pat-down search for weapons. *Collard*, 286 Mont. at 189, 951 P.2d at 59. In conducting this search, the officer felt an object whose contour or mass made it immediately apparent that ski goggles, which the suspect was reportedly wearing, were concealed on Collard's person. The officer testified that he immediately knew, after touching the object for a matter of seconds, that it was a pair of ski goggles. *Collard*, 286 Mont. at 189, 951 P.2d at 59.

¶15. In contrast to *Collard*, there is no testimony or record in this case as to what, if anything, Officer Longin suspected when he conducted his pat-down of Heath. Did he feel the glass pipe in Heath's pocket and believe that it was a dangerous weapon or did he just reach in Heath's left inside coat pocket and take it out? In doing the pat-down, did he immediately recognize it as contraband or did he first have to spend some time manipulating it?

¶16. The "plain feel" doctrine is based upon the premise that the incriminating nature of the object is "immediately apparent" during the pat-down. *See Collard*, 286 Mont. at 195, 951 P.2d at 63 (citations omitted). In the absence of any evidence as to how the officer discovered the glass pipe or what his perceptions and suspicions were, there is no basis for concluding that the glass pipe's incriminating nature was immediately apparent and thus no basis for invoking the "plain feel" doctrine.

¶17. The nature of a *Terry* stop and frisk search is such that an officer is allowed to feel the outer clothing of the suspect and is authorized to seize anything that can, based upon the officer's touch perceptions, be mistaken for a weapon or that is immediately apparent as contraband. Here, there is no evidence as to what Officer Longin's perceptions were when he conducted the pat-down of Heath. The District Court merely recites that Longin "recovered a small leather bag from the middle inside pocket of the Defendant's coat, and a small glass pipe from his left inside coat pocket." An officer cannot, pursuant to a *Terry*

stop and frisk, randomly "recover" items from the suspect's clothing and proceed to examine them. Under Montana statute, an officer conducting a frisk may take possession of any object discovered during the frisk if there is probable cause to believe it is a deadly weapon. Section 46-5-402(2), MCA. Accordingly, he must conduct a pat-down and ascertain whether an object feels like a weapon or something which might contain a weapon. In other words, the officer must suspect the object is a weapon. Minnesota v. Dickerson (1993), 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334. The perceptions resulting from the officer's pat-down define the scope of any further search or seizure. It is not permissible to simply "recover" objects from the suspect's clothing, open the items or further examine them, and then, after the fact, argue that the objects *might have* contained a weapon or were immediately apparent as contraband.

¶18. Once the defendant has made a prima facie showing of illegality, the burden is on the State to prove that the search comes within a recognized exception to the warrant requirement. *See, e.g.,* State v. Blakney (1980), 185 Mont. 470, 480, 605 P.2d 1093, 1098-99. Here it is uncontested that the search was without a warrant and is per se unreasonable. The State has not shouldered its burden of showing that the search comes within the permissible scope of a stop and frisk. Although the officer was justified in conducting a stop and frisk, there is no evidence or testimony from which the Court can conclude that Officer Longin had probable cause to believe that the leather coin purse or the 2" long glass pipe were deadly weapons (or contained deadly weapons) and were thus subject to seizure pursuant to § 46-5-402(2), MCA. The State relies on State v. LaMere (1987), 226 Mont. 323, 326, 735 P.2d 511, 512, for the proposition that dangerous instrumentalities can be concealed in innocent-looking articles, i.e., a cigarette pack. *LaMere*, however, is inapposite since it involved a police station inventory search following the defendant's arrest rather than a stop and frisk. *See LaMere*, 226 Mont. at 324, 735 P.2d at 511. As an inventory search, it was not subject to the probable cause strictures of § 46-5-402(2), MCA. *See* State v. Pastos (1994), 269 Mont. 43, 887 P.2d 199.

¶19. The District Court's denial of Heath's motion to suppress the items seized from his person pursuant to the stop and frisk is reversed. The matter is remanded to the District Court for further proceedings consistent with this holding.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ J. A. TURNAGE

/S/ KARLA M. GRAY

/S/ JAMES C. NELSON

/S/ WILLIAM E. HUNT, SR.

/S/ TERRY N. TRIEWEILER

/S/ JIM REGNIER