117 P.3d 142

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Steven G. FAITH, Defendant–Appellant.**

No. 30896.

Court of Appeals of Idaho.

July 8, 2005.

Molly J. Huskey, State Appellate Public Defender; Erik R. Lehtinen, Deputy Appellate Public Defender, Boise, for appellant. Erik R. Lehtinen argued.

Hon. Lawrence G. Wasden, Attorney General; Jessica M. Lorello, Deputy Attorney General, Boise, for respondent. Jessica M. Lorello argued.

WALTERS, Judge Pro Tem.

Steven G. Faith appeals from the judgment of conviction and sentence entered upon his conditional guilty plea to possession of methamphetamine. At issue on appeal is whether the district court erred in denying Faith's motion to suppress evidence. We reverse, holding that the police exceeded permissible limits in searching Faith during a *Terry*[1] stop.

## I.

### FACTUAL AND PROCEDURAL SUMMARY

While on a routine early morning patrol, Post Falls Police Department Officer John Mason was checking a motel parking lot for "stolen vehicles, suspicious individuals out in the lots possibly trying to commit vehicle burglaries, that type of thing." At approximately 2:00 in the morning, Officer Mason

---

1. *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

noticed a 1990 Oldsmobile in the parking lot which appeared to him to have been abandoned. He ran a license check on the vehicle and discovered that it was registered to Raymond Flynn, who had two outstanding warrants from neighboring Shoshone County.

After determining that Flynn's vehicle was unoccupied, Officer Mason called for backup to aid in searching for Flynn in the vicinity of the motel. Officer Jason DeWitt arrived on the scene within minutes and accompanied Officer Mason into the motel lobby to inquire of the desk clerk whether Flynn or his car were registered at the motel. The desk clerk had no information regarding Flynn or the vehicle. Officers Mason and DeWitt left the motel lobby and returned once more to Flynn's automobile. This time, the car was occupied. The officers observed a man, who turned out to be Faith, lying down in the driver's seat of the Oldsmobile. Officer Mason ordered Faith out of the vehicle and asked him if he was Raymond Flynn. Faith said he was not Flynn and that his name was "Steve." Officer Mason decided to hold Faith by handcuffing his hands behind his back, informing Faith that he was not under arrest at this point, but was merely being detained while the police confirmed his identity.

As they moved away from the car toward a curb where Mason was going to have Faith sit down, Officer Mason observed a knife with an eight-inch fixed blade in the snow near the curb. Officer Mason retrieved the knife, which he had not previously noticed, while Officer DeWitt initiated a *Terry* frisk of Faith for any possible weapons. During the course of this search, Officer DeWitt felt a rounded metal object in the front pocket of Faith's vest, which Faith was wearing under his overcoat. Officer DeWitt determined that the object was a container measuring approximately three-quarters of an inch thick with the diameter of a baseball. Officer DeWitt testified that the container did not feel like a weapon, but that he heard something "jingling around in it." Officer DeWitt testified that he removed the container, which

turned out to be an Altoids brand mints tin, because he "wanted to see what was in it." Officer DeWitt handed the container to Officer Mason, who immediately opened the tin.

Officer Mason testified that illegal narcotics are commonly transported in such tins and that he had also previously seen razor blades and needles carried in Altoids tins. Officer Mason testified that although he did not have any specific fear that there was a weapon in Faith's Altoids tin, neither did he want to return the tin to Faith "in case it [did] have something in it." Faith's Altoids tin did not contain any weapons, or even any metal items that could have caused the "jingling" Officer DeWitt testified to hearing. Rather, Officer Mason discovered methamphetamine residue and drug paraphernalia.

Faith was arrested and charged with possession of methamphetamine, I.C. § 37–2732(c).[2] Faith filed a motion to suppress, which the district court denied. Pursuant to a subsequent plea agreement, Faith thereafter entered a conditional guilty plea, reserving the right to appeal the denial of his suppression motion.

## II.

### ISSUE

On appeal, Faith argues that the district court erred in denying his motion to suppress. In particular Faith contends that the officers lacked appropriate justification for (1) manipulating the Altoids tin which was inside Faith's pocket; (2) removing the tin container from his pocket; or (3) opening the container once it was removed from Faith's possession and control. In response, the state urges that discovery of the contents of the Altoids box was proper under the *Terry* doctrine.

## III.

### STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a deci-

---

2. Faith was also charged with possession of drug paraphernalia, I.C. § 37–2734A, but this charge was dropped as part of a plea agreement.

**730**

sion on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson,* 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct.App.1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez–Molina,* 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers,* 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct.App.1999).

### IV.

### ANALYSIS

We note at the outset that Faith does not challenge his detention by the officers, including the use of handcuffs to restrain him, and he concedes that the officers were justified in conducting a *Terry* stop and frisk under the circumstances shown by the evidence.

■ The stop and frisk procedure was first enunciated by the United States Supreme Court in *Terry v. Ohio,* and is defined as "a carefully limited search of the outer clothing of such persons [suspects the officer fears may be armed and presently dangerous] in an attempt to discover weapons which might be used to assault [the officer]." *Terry,* 392 U.S. at 30, 88 S.Ct. at 1884, 20 L.Ed.2d at 911. The *Terry* doctrine is an exception to the Fourth Amendment warrant requirement, and acknowledges the right of police to stop and question an individual absent sufficient probable cause to make an arrest. *Terry,* 392 U.S at 30, 88 S.Ct. at 1884, 20 L.Ed.2d at 911; *State v. Wright,* 134 Idaho 73, 76, 996 P.2d 292, 295 (2000). Once a lawful investigatory detention has been initiated, an officer may conduct a pat-down search, or frisk, of a detainee and remove anything that feels like a weapon. *Wright,* 134 Idaho at 76, 996 P.2d at 295.

Faith concedes that the officers were justified in conducting a *Terry* stop and frisk under the circumstances existing when they initiated their investigatory detention of Faith. Accordingly, the district court did not err in concluding that the officers' manipulation of Faith's outer clothing was proper when they conducted the pat-down search and found an object that was determined to be the Altoids tin. *See Minnesota v. Dickerson,* 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993).

■ The discovery of the tin as an unidentified "bulge" in the course of the pat-down would entitle the officers to assure themselves that it was not a weapon. After satisfying themselves that the item was a container and not a weapon, however, the officers had no valid reason to further invade Faith's right to be free of police intrusion absent reasonable cause to arrest him. See *United States v. Thompson,* 597 F.2d 187 (9th Cir. 1979); *State v. Allen,* 93 Wash.2d 170, 606 P.2d 1235, 1236 (1980). Further intrusion becomes a search for evidence, which the police may not do without a warrant except as an incident to a lawful arrest or with the consent of the person concerned. *Allen,* 606 P.2d at 1237. Here, the officers did not have a warrant, Faith was not under arrest, and Faith did not consent to the search. The Altoids tin was not a weapon and it is highly unlikely that the tin could have been removed by Faith from his inside front pocket and opened by him while his hands were handcuffed behind his back, even if the tin had contained some kind of a small instrument that Faith could have used as a weapon. We conclude that the officers removal of the Altoids tin from Faith's person was beyond the permissible limits of *Terry* and was a violation of Faith's Fourth Amendment right to be free from an unreasonable search.

We further conclude that even if the officers were justified in removing the tin for their own protection or to prevent the suspect from escaping, once the container was in the officers' possession, the officers no longer had reason to believe that it posed a threat to them in either respect. If the officers thought that the Altoids box contained a razor blade or knife that could be used as a weapon or a means of escape, the officers simply could have withheld the tin from Faith. The opening of the box and inspection of its contents was unlawful. This conclusion is supported by decisions from

neighboring jurisdictions discussing similar circumstances. *See United States v. Miles,* 247 F.3d 1009 (9th Cir.2001) (small box); *State v. Heath,* 299 Mont. 230, 999 P.2d 324 (2000) (small leather coin purse); *State v. Gilkey,* 172 Or.App. 95, 18 P.3d 402 (2001) (ChapStick tube); *State v. Jones,* 103 Or. App. 316, 797 P.2d 385 (1990) (Sucrets box); *Allen,* 93 Wash.2d 170, 606 P.2d 1235 (wallet).

We find particularly persuasive the opinion of the Ninth Circuit Court of Appeals in *Miles.* There the Court wrote:

> In [*United States v. Mattarolo,* 209 F.3d 1153 (9th Cir.)] we cautioned that "[h]ad the officer continued to manipulate the object beyond what was necessary to ascertain that it posed no threat, he would have run afoul of the Supreme Court's holding in *Minnesota v. Dickerson.*" *Id.* That is exactly what the officer did here. The officer, in his police report, stated that he immediately "took [Miles] into custody to investigate the crime" and then "began to search his person for evidence." Then, according to the officer's testimony, he felt a small box in Miles's pocket. The box was no bigger than a large package of chewing gum and one-half the size of a package of cigarettes. While the officer may have been patting down for a weapon, he had reached the outer limits of his patdown authority when it was clear that the object was a small box and could not possibly be a weapon. Unlike in *Mattarolo,* the officer here did not immediately recognize the box as contraband. Rather, as in *Dickerson,* "the officer determined that the object was contraband only after squeezing ... and otherwise manipulating the contents of the defendant's pocket." [Citation omitted.] At that point the officer's further manipulation of the box was impermissible. He had no cause to shake or manipulate the tiny box on the pretext that he was still looking for a weapon.
>
> The government suggests that the officer might legitimately have been looking for a tiny pen knife, needle, or other slender weapon. But the officer did not testify to such a motivation. Under the government's logic there would be no limit to the bounds of a *Terry* stop. Rather, looking for the proverbial "needle in a haystack" would become the norm. "Shake, rattle, and roll" would take on new meaning in the context of a *Terry* patdown. It must also be remembered that this search took place while Miles was handcuffed [behind his back]. Having already used significant force to secure the scene for safety purposes, the officers cannot leverage the safety rationale into a justification for a full-scale search. The search exceeded the "strictly circumscribed" limits of *Terry.*

*United States v. Miles,* 247 F.3d at 1014–15.

Here Officer DeWitt testified that once he found the Altoids box in Faith's pocket, he removed the box "because I wanted to see what was in it." He handed the tin to Officer Mason. Mason testified that the tin "could have, um, any number of items in it. It could have possibly have needles in it. It could possibly have even a small pen knife or razor blade or, um, drug items in it and paraphernalia ... [so][a]fter he handed it to me I opened it up." As was so aptly stated by the Montana Court,

> The perceptions resulting from the officer's pat-down define the scope of any further search or seizure. It is not permissible to simply "recover" objects from the suspect's clothing, open the items or further examine them, and then, after the fact, argue that the objects *might have* contained a weapon or were immediately apparent as contraband.

*Heath,* 999 P.2d at 328.

We conclude that the officers' action in removing the Altoids box from Faith's pocket, without his consent and while Faith was not under arrest, and was handcuffed and in the presence of two armed police officers, exceeded the permissible limits of *Terry.* We further conclude that the opening of the container after its seizure by the officers also violated Faith's Fourth Amendment rights. The district court's order denying Faith's suppression motion is reversed.

## V.

## CONCLUSION

The district court's order denying Faith's motion to suppress the items seized from his

person pursuant to the stop and frisk is reversed for the reasons stated. The case is remanded for further proceedings.

Chief Judge PERRY and Judge LANSING concur.

