**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 38404**

| | |
|---|---|
| **STATE OF IDAHO,** | 2013 Opinion No. 15 |
| **Plaintiff-Respondent,** | **Filed: March 4, 2013** |
| **v.** | **Stephen W. Kenyon, Clerk** |
| **MICHAEL ROWE RUSSO,** | |
| **Defendant-Appellant.** | |

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. Gregory M. Culet, District Judge.

Judgment of conviction for rape, kidnapping, and burglary, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Erik R. Lehtinen, Chief, Appellate Unit, Boise, for appellant. Erik R. Lehtinen argued.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

_____

SCHWARTZMAN, Judge Pro Tem

A jury found Michael Rowe Russo guilty of one count of rape, one count of first degree kidnapping, and one count of burglary. Russo appeals from the judgment of conviction, arguing the district court erred by failing to suppress a video found on his cell phone because the detectives had no basis to search his person or the phone's contents once the phone was discovered. Russo also argues the district court erred by allowing the State to present Idaho Rule of Evidence 404(b) testimony of his deviant sexual interests. For the reasons set forth below, we affirm.

## I.

### PROCEDURAL AND FACTUAL BACKGROUND

In the pre-dawn hours of August 27, 2009, a masked intruder entered J.W.'s apartment and violently raped her at knifepoint several times in different ways. During the rape, J.W. heard

1

her assailant open a cell phone and saw a light associated with the taking of a picture or video. The culprit eventually left the apartment and J.W. called the police to report the crime.

The detectives who responded to J.W.'s report immediately suspected Russo because he had been previously questioned in connection with several other rapes and a sexual assault in the area. Around 5:45 a.m., roughly an hour after the rape, detectives set up surveillance outside Russo's apartment and began securing a search warrant. A search warrant was issued at 11:10 a.m. that authorized searches of Russo's apartment and motorcycle.

While the detectives had Russo's apartment under surveillance, they observed Russo leave his residence three times. On the third occasion, which occurred at 11:50 a.m., the detectives detained Russo and then searched him. That search produced Russo's cell phone. The detective who seized the phone did not view the phone's contents; however, once the phone was turned over to another detective, that detective searched through the phone under the guise of determining ownership. The phone contained a video, which the State believed Russo filmed of his and the victim's genitals during the rape. Soon thereafter, Russo was arrested. The detectives applied for an amended search warrant to further search the phone found on Russo's person. The amended warrant also sought to search the communal laundry room and two other phones found in Russo's apartment. The searches produced pornography depicting simulated rape, latex gloves, and clothing loosely matching J.W.'s report of what her attacker was wearing.[1] Also, one of Russo's neighbors informed the detectives that Russo had knocked on her door at around 6:00 a.m. and demanded that she clear out her laundry so he could do his laundry.

A grand jury indicted Russo for rape, kidnapping, and burglary. Prior to trial, Russo moved to suppress the cell phone, and its contents, obtained during the warrantless search of his person. The district court denied the suppression motion. The district court determined the search warrant allowed the detectives to search for a cell phone and the inevitable discovery doctrine resolved any timing issues regarding the subsequent viewing of the phone's contents.

Prior to trial, the State also moved to admit Rule 404(b) evidence, to which Russo objected. The district court excluded most of the evidence, but allowed some evidence regarding

---

[1] Among the items the detectives found in the laundry were a pair of jeans, a grey long-sleeve pullover shirt, and a white t-shirt. Russo notes the victim reported that her attacker was wearing jean shorts, a gray thermal shirt, and a white t-shirt.

Russo's possession of pornographic material depicting simulated rape and his statements to a detective in a prior investigation about his sexual fantasies involving rape.

The matter proceeded to a jury trial where the jury convicted Russo as charged. The district court imposed concurrent sentences of a determinate term of life imprisonment for the rape; a unified term of life, with forty years determinate, for the kidnapping; and a determinate term of ten years for the burglary. Russo appeals.

## II.

## ANALYSIS

### A.     Suppression Motion

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. Warrantless searches are presumed to be unreasonable and, therefore, violative of the Fourth Amendment. *State v. Weaver*, 127 Idaho 288, 290, 900 P.2d 196, 198 (1995); *State v. Newman*, 149 Idaho 596, 599, 237 P.3d 1222, 1225 (Ct. App. 2010). The State may overcome this presumption by demonstrating that a warrantless search either fell within a well-recognized exception to the warrant requirement or was otherwise reasonable under the circumstances. *Weaver*, 127 Idaho at 290, 900 P.2d at 198; *Newman*, 149 Idaho at 599, 237 P.3d at 1225.

The State claims the search of Russo's person was justified as a *Terry* frisk. In *Terry v. Ohio*, 392 U.S. 1 (1968), the United States Supreme Court created a stop-and-frisk exception to the Fourth Amendment warrant requirement. The stop and the frisk constitute two independent actions, each requiring a distinct and separate justification. *State v. Babb*, 133 Idaho 890, 892, 994 P.2d 633, 635 (Ct. App. 2000); *State v. Fleenor*, 133 Idaho 552, 556, 989 P.2d 784, 788 (Ct. App. 1999).

The stop is justified if there is a reasonable and articulable suspicion that the individual has committed or is about to commit a crime. *Florida v. Royer*, 460 U.S. 491 (1983); *Terry*, 392 U.S. at 30; *State v. DuValt*, 131 Idaho 550, 553, 961 P.2d 641, 644 (1998); *State v. Ferreira*, 133 Idaho 474, 479, 988 P.2d 700, 705 (Ct. App. 1999). However, merely because there are reasonable grounds to justify a lawful investigatory stop, such grounds do not automatically justify a frisk for weapons. *Babb*, 133 Idaho at 892, 994 P.2d at 635. An officer may frisk an individual if the officer can point to specific and articulable facts that would lead a reasonably prudent person to believe that the individual with whom the officer is dealing may be armed and presently dangerous and nothing in the initial stages of the encounter serves to dispel this belief. *Terry*, 392 U.S. at 27; *Babb*, 133 Idaho at 892, 994 P.2d at 635; *Fleenor*, 133 Idaho at 555, 989 P.2d at 787. In our analysis of a frisk, we look to the facts known to the officer on the scene and the inferences of risk of danger reasonably drawn from the totality of those specific circumstances. *Babb*, 133 Idaho at 892, 994 P.2d at 635; *Fleenor*, 133 Idaho at 555, 989 P.2d at 787. *See also State v. Muir*, 116 Idaho 565, 567-68, 777 P.2d 1238, 1240-41 (Ct. App. 1989).

Russo concedes that, pursuant to *Michigan v. Summers*, 452 U.S. 692 (1981), the detectives had the authority to detain him outside of his residence as they executed the search warrant. Russo, however, argues the detectives did not have reasonable, articulable suspicion that he was armed and presently dangerous at the time they executed the search of his person, and thus, a *Terry* frisk was unwarranted based on the following:

> It was nearly noon, so lighting would not have been a concern; Mr. Russo was alone and, therefore, outnumbered by the officers; Mr. Russo was wearing jeans and a shirt and, therefore, would have had little opportunity to conceal a weapon; and Mr. Russo was already in handcuffs by the time he was searched, so even if he had a weapon, it would have been difficult, if not impossible, to access and use effectively.

We do not find Russo's argument persuasive. At the time Russo was detained and frisked, the detectives possessed the following information: (1) a search warrant had just been issued for Russo's apartment and motorcycle; (2) Russo had been convicted of rape in Washington in 1995; (3) Russo was questioned by the police in connection with multiple rapes and a sexual assault in the area in the past two years, yet had never been charged with any of the crimes; (4) Russo was suspected of committing a forcible rape that morning; (5) the victim reported to the police that her attacker used a knife; and (6) Russo's motorcycle was still hot

4

when the detectives arrived at his residence early in the morning, indicating he had driven the motorcycle shortly after the rape was reported. These specific and articulable facts would lead a reasonably prudent person to believe Russo may be armed and presently dangerous. The detectives were justified in conducting a *Terry* frisk, which consisted of a pat down of Russo's outer clothing.

Russo next argues that, even if the detectives had reasonable and articulable suspicion he was armed and presently dangerous, the detective's search of the cell phone far exceeded what was permissible under *Terry*. Russo contends that "once his cell phone was identified as such--and certainly once it was removed from [his] reach--it was not subject to further search." In support of his argument, Russo contends *State v. Faith*, 141 Idaho 728, 117 P.3d 142 (Ct. App. 2005) is analogous to the present case. There, this Court held:

> The discovery of the tin as an unidentified "bulge" in the course of the pat-down would entitle the officers to assure themselves that it was not a weapon. After satisfying themselves that the item was a container and not a weapon, however, the officers had no valid reason to further invade Faith's right to be free of police intrusion absent reasonable cause to arrest him. *See United States v. Thompson*, 597 F.2d 187 (9th Cir. 1979); *State v. Allen*, 93 Wash. 2d 170, 606 P.2d 1235, 1236 (1980).

*Faith*, 141 Idaho at 730, 117 P.3d 144.

Russo's argument is that once the detectives identified the item in his pocket as a cell phone, they could not then search the phone. However, the facts in the present case are distinguishable from those in *Faith*. Most notably, the officers in *Faith* did not have a search warrant, whereas the detectives here had a valid search warrant. The search warrant for Russo's residence and motorcycle provided: "YOU ARE THEREFORE COMMANDED, at any time of the day, to make immediate search of the above-described premises for the property described above and to seize the property on the Search Warrant Affidavit filed therein." The search warrant specifically listed a "cellular phone" and "any media capable of storing photo files" as items to be seized.

The above analysis does not entirely ease this Court's concern over the phone being pulled from Russo's pocket and then searched. The search still occurred outside the apartment

5

described in the warrant and the individual was not identified as a person to be searched.[2] However, in these circumstances a sufficient nexus existed between the individual, premises and items to be searched that justified the brief intrusion. A magistrate issued the warrant because there was a fair probability that evidence of the rape would be found in Russo's apartment. The affidavit used to secure that warrant clearly identified Russo as the individual who was suspected to have committed the crime. Russo also was in the immediate vicinity of the location identified to be searched; he was detained only a few footsteps from the entrance of the small apartment complex and had been going in and out of his apartment all morning. Lastly, the victim reported that her assailant used a cell phone to video or photograph the rape and cell phones are commonly found on the person. In general, courts should avoid hypertechnicality when interpreting warrants. *State v. Sapp*, 110 Idaho 153, 155, 715 P.2d 366, 368 (Ct. App. 1986). Warrants should be viewed in a commonsense and realistic fashion. *State v. Holman*, 109 Idaho 382, 388, 707 P.2d 493, 499 (Ct. App. 1985). Under these circumstances, we conclude that once the detectives identified the object in Russo's pocket as a cell phone during a lawful frisk, a commonsense reading of the scope of the search warrant allowed them to retain the cell phone and search its contents.

---

[2] It would have been an easier question to determine whether Russo would have been subject to a search if he was detained inside his apartment. Even with Russo being searched outside his apartment, we are not convinced that the search of Russo's person and his cell phone was not within the scope of the search warrant. The argument advanced by Russo is essentially that by stepping outside of his apartment, he crossed a threshold that somehow provided him with greater protection than would have been available if he were inside his residence. In the present case several factors are notable: (1) a detached and neutral magistrate issued a warrant to search Russo's apartment and motorcycle parked outside; (2) based on the victim's report, clothing and a cell phone were arguably the main objectives of the search; (3) clothing and a cell phone are typically found on a person; (4) Russo was in close proximity to both his apartment and motorcycle; and (5) Russo entered and exited his apartment several times during the detectives' surveillance. Using common sense to interpret the warrant, combined with the circumstances of the case, it is arguable that the police would have been justified to search Russo's person for the phone under the scope of the warrant, without the need to analyze *Terry*. In an effort to avoid this issue in the future, we *suggest* that a search warrant specifically include the person in instances where the warrant identifies a particular premises and items typically found on a person known to reside there.

6

**B.      Rule 404(b) Evidence**

The State moved to allow introduction of Rule 404(b) evidence.  The evidence included:

(1) that Russo had committed other rapes; (2) that the other rapes, like the one charged, included "the inability to maintain an erection, the use of gloves, the taking of the victim's clothes, the use of weapons, and/or other distinguishing characteristics"; (3) that Russo admitted rape fantasies; and (4) that Russo possessed pornographic depictions of rape.

The district court excluded most of the evidence.  It allowed, however, limited testimony of how Russo came to be a suspect in the charged rape, Russo's admissions of having rape fantasies, and Russo's possession of pornographic material depicting simulated rape.  Regarding Russo's rape fantasies and possession of pornographic material depicting simulated rape, the district court specifically found that "all those are relevant to motive, plan and, perhaps, scheme in this instance."  On appeal, Russo challenges the admission of this evidence.

Evidence of other crimes, wrongs, or acts is not admissible to prove a defendant's criminal propensity.  I.R.E. 404(b); *State v. Johnson*, 148 Idaho 664, 667, 227 P.3d 918, 921 (2010); *State v. Parmer*, 147 Idaho 210, 214, 207 P.3d 186, 190 (Ct. App. 2009).  However, such evidence may be admissible for a purpose other than that prohibited by Rule 404(b).  *Parmer*, 147 Idaho at 214, 207 P.3d at 190.  When determining the admissibility of evidence to which a Rule 404(b) objection has been made, the trial court must first determine whether there is sufficient evidence of the other acts that a reasonable jury could find the conduct actually occurred.  If so, then the court must consider:  (1) whether the other acts are relevant to a material disputed issue concerning the crime charged, other than propensity; and (2) whether the probative value is substantially outweighed by the danger of unfair prejudice.  *State v. Grist*, 147 Idaho 49, 52, 205 P.3d 1185, 1188 (2009); *Parmer*, 147 Idaho at 214, 207 P.3d at 190.  On appeal, this Court defers to the trial court's determination that there is sufficient evidence of the other acts if it is supported by substantial and competent evidence in the record.  *Parmer*, 147 Idaho at 214, 207 P.3d at 190.  We exercise free review, however, of the trial court's relevancy determination.  *State v. Sheldon*, 145 Idaho 225, 229, 178 P.3d 28, 32 (2008).  The trial court's balancing of the probative value of the evidence against the danger of unfair prejudice will not be disturbed unless we find an abuse of discretion.  *State v. Norton*, 151 Idaho 176, 190, 254 P.3d 77, 91 (Ct. App. 2011).

7

This Court, in *State v. Rossignol*, 147 Idaho 818, 215 P.3d 538 (Ct. App. 2009), examined the admissibility of pornography to show motive and intent. There, Rossignol was charged with lewd conduct for having sexual contact with his daughter. The trial court admitted evidence that Rossignol possessed child pornography and incest stories to prove intent, motive, and plan. *Id.* at 823, 215 P.3d at 543. Although evidence of the pornography was admitted primarily to corroborate the victim's claim that Rossignol showed her pornography, this Court found the "incest stories were relevant to the intent element of the crimes Rossignol was charged with and to show Rossignol's motive and plan to engage in sexual acts with his daughter." *Id.* at 825, 215 P.3d at 545.

In a recent decision, the Appellate Court of Illinois was faced with a similar set of facts: the defendant was accused of rape and the State sought to introduce rape fantasy pornography to prove motive and plan. *People v. Pelo*, 942 N.E.2d 463 (Ill. App. Ct. 2010). There, the court determined that pornography depicting simulated rape was both relevant to the defendant's motive and plan and that its probative value was not outweighed by its prejudicial effect. Pelo, a police sergeant, was charged with thirty-seven counts of criminal conduct originating from two separate cases. Specifically, the State alleged that Pelo committed a series of crimes involving the stalking, intimidation, home invasion, residential burglary, unlawful restraint, and aggravated sexual assault of five women. Pelo appealed his subsequent conviction, arguing, inter alia, that the trial court erred by allowing the State to introduce evidence involving graphic pornographic material depicting simulated rape recovered from Pelo's home computer. In reaching its conclusion on Pelo's relevancy argument, the court stated:

> As previously explained, the pornography at issue depicted primarily violence against women, bondage, sadism, and rape. We earlier described this material at length, and we will not repeat that description now. Instead, it suffices to note that, as the court observed, a significant portion of this material involved the use (or forced use) of fingers or foreign objects to penetrate women both vaginally and anally, as well as many instances of female masturbation and other fetish-based dramatizations. The court explained that after carefully considering all of the material the State offered, as well as the arguments of counsel, it found that the evidence was relevant because of the particular circumstances of the crimes involving the victims in this case. In particular, the court ruled that the pornographic "sites and photographs and images that have to do with forced sex, rape, bondage, the use of foreign objects, and observations of female masturbation are relevant." We also note that the court ruled that some of the pornography would not be admitted--namely, that which dealt with the "forced witness"

8

concept, as well as videos that ended with a shower scene. The court found that it did not see those matters as relevant to the State's charges.

We conclude that the trial court correctly determined that the vast majority of the pornography was relevant in this case, given that it (1) involved forced sex, rape, bondage, the use of foreign objects on women, and female masturbation and (2) was recovered from defendant's home computer. In other words, the court found that most of the pornography tended to prove a fact in controversy--namely, who committed the crimes charged--because the pornography, which was found in defendant's computer, involved acts and scenarios that were emulated by the perpetrator in these cases.

*Id.* at 485-86.

Here, the facts--Russo possessing pornographic material depicting simulated rape and having rape fantasies--are analogous to those in *Rossignol* and *Pelo*. Russo was charged with raping a woman at knifepoint. Russo admitted to having fantasies involving rape. Moreover, Russo had in his possession pornographic materials depicting simulated rape. Based on the circumstances of this case, the trial court correctly determined the Rule 404(b) evidence was relevant to prove Russo's motive, intent, or plan.

Next, Russo claims that even if the Rule 404(b) evidence was relevant, the unfair prejudice resulting from the evidence substantially outweighed its probative value. The second tier in the analysis is the determination of whether the probative value of the evidence is substantially outweighed by unfair prejudice. *Grist*, 147 Idaho at 52, 205 P.3d at 1188. Unfair prejudice in this context means the evidence in question will somehow cast a negative light upon a defendant for reasons that have nothing to do with the case on trial. *Pelo*, 942 N.E.2d at 487. In other words, the jury would be deciding the case on an improper basis, such as sympathy, hatred, contempt, or horror. When reviewing this tier we use an abuse of discretion standard. *Grist*, 147 Idaho at 52, 205 P.3d at 1188. When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the lower court reached its decision by an exercise of reason. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

In its oral ruling, the district court engaged in a balancing test under Idaho Evidence Rule 403 to determine whether the danger of unfair prejudice substantially outweighed the probative value of the evidence. The court concluded Russo's admitted sexual fantasies could

come in, but the typical foundational elements, such as when and where the admission was made, would be prohibited. The district court prohibited these foundational elements because it was concerned with their prejudicial effect.

Based on our review of the record in this case, we conclude the district court did not abuse its discretion by determining the probative value of the Rule 404(b) evidence was not substantially outweighed by unfair prejudice. The district court correctly noted the decision was within its discretion, detailed the applicable law on Rule 404(b) evidence, and used reason in its analysis of that law.

## III.

## CONCLUSION

The district court did not err by denying Russo's motion to suppress the video found on his cell phone. The district court also did not err by concluding the evidence of Russo's deviant sexual interests was relevant and that the probative value was not substantially outweighed by the danger of unfair prejudice. Accordingly, Russo's judgment of conviction for rape, kidnapping, and burglary is affirmed.

Judge MELANSON **CONCURS**.

Judge GRATTON, **SPECIALLY CONCURRING**

I concur in the majority opinion. However, I write to note that I believe that the seizure and search of the cell phone from Russo's person was covered by the warrant. Russo does not seriously argue that his person would not have been subject to search under the warrant had he been located inside the apartment. *See State v. Beals*, 410 So. 2d 745, 749 (La. 1982) (search of the resident is reasonably and necessarily within the scope of the warrant). Indeed, the subject of the warrant was principally clothing and a cell phone, items common sense tells us are likely to be located upon a person. Russo, however, makes much ado about the fact that he was detained and the cell phone seized and searched outside the threshold of the apartment and that the warrant specifically mentions the apartment but not his person. In my view, Russo relies on an overly broad reading of *Michigan v. Summers*, 452 U.S. 692 (1981), to support his argument that the search and seizure outside the threshold of the apartment was constitutionally impermissible as outside the premises described in the warrant.

I further agree with the lower court that the seizure and search of the cell phone was subject to the inevitable discovery doctrine. *See State v. Buterbaugh*, 138 Idaho 96, 101, 57 P.3d

10

807, 812 (Ct. App. 2002). The cell phone would inevitably have been seized and subject to search incident to Russo's arrest. Russo's arrest was assured--without regard to the cell phone--based upon the information the officers had which supported the issuance of the warrant in the first place, including the motorcycle ridden in the early morning hours, as well as the latex gloves (items described as having been used in the rape), the clothing that was consistent with that described by the victim, and the information that Russo had demanded to launder his clothing around 6:00 a.m. The inevitable discovery doctrine applies and supports the district court's denial of Russo's suppression motion.