IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 34374

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | 2009 Opinion No. 45 |
| Plaintiff-Respondent, | ) | |
| | ) | Filed: June 12, 2009 |
| v. | ) | |
| | ) | Stephen W. Kenyon, Clerk |
| DONALD ROGER ROSSIGNOL, JR., | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Second Judicial District, State of Idaho, Latah County.  Hon. John H. Bradbury, District Judge.

Judgment of conviction for three counts of lewd conduct with a minor under sixteen, one count of sexual abuse of a child, and being a persistent violator, affirmed.

Greg S. Silvey, Kuna, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Daniel W. Bower, Deputy Attorney General, Boise, for respondent.

_____

PERRY, Judge

Donald Roger Rossignol, Jr., appeals from his judgment of conviction for three counts of lewd conduct with a minor under sixteen years of age, one count of sexual abuse of a child, and being a persistent violator.  For the reasons set forth below, we affirm.

## I.

## FACTS AND PROCEDURE

Rossignol was initially charged with three counts of lewd conduct and one count of sexual abuse in 2005 for inappropriate sexual contact with his daughter.  Rossignol's daughter alleged that Rossignol had shown her pornography on his computer and then inappropriately touched her.  A search of Rossignol's computer revealed numerous pornographic images and movies and several stories regarding incest.  Rossignol's daughter was seven years old at the time the abuse occurred.  After his initial appearance, Rossignol was released on his own recognizance.

1

Based on the allegations in this case, a child protection case was initiated. Rossignol testified during the child protection case. Alleging that Rossignol had provided false testimony during that hearing, the state filed perjury charges against Rossignol. The state then filed a motion to increase Rossignol's bail in this case to ensure his future appearance. A hearing was set on the motion to increase bail. Rossignol left the jurisdiction, did not appear at the hearing to increase bail, and his initial trial date was vacated. Rossignol turned himself in to authorities several months later and a new trial date was set. The state thereafter amended the information to include an allegation that Rossignol was a persistent violator.

Numerous motions in limine were filed by both Rossignol and the state. Additionally, a hearing was conducted to determine if the victim was competent to testify. At that hearing, Rossignol wished to question a psychologist who had treated the victim and diagnosed the victim with reactive attachment disorder. The victim invoked the psychologist-patient privilege pursuant to the Idaho Rules of Evidence, and the district court denied Rossignol the opportunity to question the psychologist at length about what the victim had disclosed to her. The district court thereafter determined that the victim was competent to testify at trial.

Rossignol's defense at trial was that the victim's reactive attachment disorder affected her relationship with her father, that the victim learned terminology related to sexual abuse from her experience living with her mother in Wyoming, and that Rossignol had committed no inappropriate acts with his daughter. Rossignol's first trial ended in a mistrial when the jury could not reach a unanimous verdict. Rossignol's second trial resulted in a guilty verdict for three counts of lewd conduct with a minor under sixteen years of age, I.C. § 18-1508, one count of sexual abuse of a child, I.C. § 18-1506, and being a persistent violator, I.C. § 19-2514. Rossignol appeals.

## II.

## ANALYSIS

### A. Evidentiary Issues

On appeal, Rossignol challenges several evidentiary rulings by the district court. Specifically, Rossignol asserts the district court erred in admitting evidence related to his flight from the jurisdiction, admitting pornographic evidence and incest stories recovered from his computer, admitting a transcript from an interview between the victim and a detective, and the

2

district court's determination forbidding Rossignol from extensively questioning the victim's psychologist at a hearing to determine if the victim was competent to testify at trial.

### 1.      Flight

Rossignol asserts that the district court erred in allowing evidence at trial that he failed to appear at a hearing on the state's motion to increase bond.  Specifically, Rossignol contends that the evidence of flight is irrelevant and does not demonstrate consciousness of guilt to the lewd conduct and sexual abuse charges because he also failed to appear on the subsequent charge of perjury.  In the alternative, Rossignol argues that the probative value of the evidence of flight is substantially outweighed by the danger of unfair prejudice.

Escape or flight is one of the exceptions to the general rule prohibiting evidence of prior bad acts or crimes.  *State v. Cootz,* 110 Idaho 807, 814, 718 P.2d 1245, 1252 (Ct. App. 1986).  Evidence of escape or flight may be admissible because it may indicate a consciousness of guilt.  *Id.*  However, the inference of guilt may be weakened when a defendant harbors motives for escape other than guilt of the charged offense.  *Id.*

Admission of evidence which is probative on the issue of flight to avoid prosecution requires the trial court to conduct a two-part analysis.  *State v. Moore,* 131 Idaho 814, 819, 965 P.2d 174, 179 (1998).  First, the trial court must determine that the evidence is relevant under I.R.E. 401; and, second, the court must determine that the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.  *Id*.  This Court reviews the question of relevancy in the admission of evidence de novo.  *Id*.  A trial court's decision that evidence is more probative than prejudicial is reviewed for abuse of discretion.  *Id*.

The "existence of alternative reasons for the escape goes to the weight of the evidence and not to its admissibility." *State v. Jeffers,* 661 P.2d 1105, 1116 (Ariz. 1983).  In that case, Jeffers was in jail facing homicide charges.  Jeffers had previously been sentenced to twelve years for receiving stolen property and twenty years for a federal firearm violation.  Jeffers escaped from jail, and the trial court allowed the state to present evidence of Jeffers' escape to show his consciousness of guilt during the homicide trial.  On appeal, Jeffers argued that, because there was another possible reason for the escape--the combined thirty-two-year sentence he was facing for the two prior convictions--the evidence of his escape was irrelevant in the homicide case.  The Arizona Supreme Court acknowledged that authority exists in other jurisdictions that the circumstances must be such as to exclude every reasonable hypothesis

3

except that of the defendant's guilt of the offense charged in order for the fact of escape to be admissible at trial. However, the Court noted more recent authority that indicates that evidence of escape may be introduced in a criminal case despite a multiplicity of pending charges. *Id. See also,* 3 A.L.R. 4th 1085 (1981) (noting that the majority of cases have held that evidence of escape is admissible and any ambiguities affect only the weight to be given the evidence). Therefore, the Court determined that Jeffers could have offered an explanation of the escape that did not implicate him in the homicide case, but that it was not error for the trial court to allow the admission of evidence of Jeffers' escape. *Jeffers,* 661 P.2d at 1116.

In this case, prior to the first trial, Rossignol filed several motions in limine. The district court heard argument and ruled on the evidence of flight as follows:

> In the case at hand Mr. Rossignol was charged with three counts of lewd conduct with a minor under sixteen years of age and one count of sexual abuse on a minor on November 15, 2005. Mr. Rossignol appeared for his arraignment on January 3, 2006[,] and a trial was set for June 12, 2006. Upon a motion to increase bail based on a new felony complaint of perjury, I ordered Mr. Rossignol to appear in court on March 17, 2006. Mr. Rossignol failed to appear at that hearing and failed to appear at a preliminary hearing on perjury charges on March 24, 2006. I vacated the June 12, 2006[,] trial due to his unknown whereabouts and issued a bench warrant. Mr. Rossignol turned himself in on July 11, 2006.
>
> Mr. Rossignol argues that he did not flee at the first opportunity and he appeared at many hearings concerning the Child Protection Act proceedings. He also argues that the circumstances surrounding his departure from the state do not clearly point to one particular reason and that he could not explain his flight without referring to the perjury charge.
>
> Mr. Rossignol fled from the state while very serious charges were pending against him and a trial date was quickly approaching. The maximum penalty for lewd and lascivious conduct with a minor is life in prison. The maximum penalty for perjury is fourteen years. The new allegations of perjury were directly related to the Child Protection Act proceedings which arose out of the charges at issue here. It is objectively unreasonable to conclude that the perjury charges, as a discreet event, rather than the convergence of events relating to the child sex abuse charges, gave rise to Mr. Rossignol's flight. Mr. Rossignol's flight from the county is therefore relevant and not unfairly prejudicial.

Prior to Rossignol's second trial, the motion in limine to exclude evidence of his flight was argued again. The district court allowed the state to introduce evidence of Rossignol's flight at the second trial for the same reasons it allowed that evidence during Rossignol's first trial.

4

On appeal, Rossignol argues that this Court should adopt the older line of authority from the cases in *Jeffers* that do not permit use of escape or flight evidence where the defendant faces incarceration or punishment for a charge other than the one on which he or she is being tried. We decline Rossignol's invitation. Evidence need only be of slight relevance to meet the requirements of I.R.E. 401. *See State v. Waddle,* 125 Idaho 526, 528, 873 P.2d 171, 173 (Ct. App. 1994). Instead, we conclude that the existence of alternative reasons for the escape or flight goes to the weight of the evidence and not to its relevance or admissibility. The district court did not err in concluding the evidence of Rossignol's flight was relevant.

In the alternative, Rossignol argues that the district court erred in determining that the probative value of the evidence of his flight was not substantially outweighed by the danger of unfair prejudice. Specifically, Rossignol claims that he would not be able to explain the alternative reason for the flight--the perjury charge--without disclosing evidence of that charge and a prior conviction in Wyoming, both of which the district court ruled were admissible for impeachment purposes only. We conclude the district court properly balanced the probative value of the evidence with the danger of unfair prejudice and that Rossignol has not demonstrated the district court abused its discretion in that regard.

### 2.    Adult pornography and incest stories

Rossignol argues that the district court erred in admitting evidence of adult pornography and three incest stories that were found on his computer. Specifically, Rossignol contends the pornography does not corroborate the victim's testimony because the victim did not describe the images she was shown in detail or identify the pornographic evidence admitted at trial as what she had been shown prior to or during the abuse. Rossignol further asserts that the incest stories do not corroborate the victim's testimony because she did not testify about the stories. Therefore, Rossignol contends the evidence was inadmissible propensity evidence. Rossignol also argues the probative value of the admission of the actual pornographic images and the stories is substantially outweighed by unfair prejudice, in part, because he asserts that evidence of the pornographic images and incest stories could have been introduced without admitting their actual images and content. The state argues that the pornographic images were relevant to corroborate the victim's testimony that her father showed her pornographic images on his computer and then engaged in similar sexual acts with her and that the incest stories were relevant to show Rossignol's intent, motive, and plan to engage in sexual acts with his daughter.

5

Evidence of other crimes, wrongs, or acts is not admissible to prove a defendant's criminal propensity. I.R.E. 404(b); *State v. Needs*, 99 Idaho 883, 892, 591 P.2d 130, 139 (1979); *State v. Winkler*, 112 Idaho 917, 919, 736 P.2d 1371, 1373 (Ct. App. 1987). However, such evidence may be admissible for a purpose other than that prohibited by I.R.E. 404(b). *State v. Avila*, 137 Idaho 410, 412, 49 P.3d 1260, 1262 (Ct. App. 2002). In determining the admissibility of evidence of prior bad acts, the Supreme Court has utilized a two-tiered analysis. The first tier involves a two-part inquiry: (1) whether there is sufficient evidence to establish the prior bad acts as fact; and (2) whether the prior bad acts are relevant to a material disputed issue concerning the crime charged, other than propensity. *State v. Grist*, 147 Idaho 49, 52, 205 P.3d 1185, 1188 (2009). We will treat the trial court's factual determination that a prior bad act has been established by sufficient evidence as we do all factual findings by a trial court. We defer to a trial court's factual findings if supported by substantial and competent evidence in the record. *State v. Porter*, 130 Idaho 772, 789, 948 P.2d 127, 144 (1997). In this case, Rossignol does not challenge the existence of the prior bad act as an established fact. Therefore, we address only the second part of the first tier--the relevancy determination. Whether evidence is relevant is an issue of law. *State v. Atkinson*, 124 Idaho 816, 819, 864 P.2d 654, 657 (Ct. App. 1993).

Therefore, when considering admission of evidence of prior bad acts, we exercise free review of the trial court's relevancy determination. *Id.* The second tier in the analysis is the determination of whether the probative value of the evidence is substantially outweighed by unfair prejudice. *Id.* When reviewing this tier we use an abuse of discretion standard. *Id.* When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the lower court reached its decision by an exercise of reason. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

Many jurisdictions have concluded that evidence of pornography possessed by a defendant may be admitted in criminal prosecutions for sexual misconduct to corroborate a victim's testimony if there is some connection between the pornography and the crime charged. *See, e.g., Herring v. State,* 653 S.E.2d 494, 498 (Ga. Ct. App. 2007) (noting that evidence of adult pornography was not admissible in child sex abuse case where the state "produced no

6

evidence that Herring viewed child pornography, or that he viewed any pornography at all in the presence of the victim or other children"); *People v. Allison,* 452 N.E.2d 148, 153 (Ill. App. Ct. 1983) (holding that, where the "complainant testified that defendant showed him books 'with pictures of naked ladies,'" pornographic evidence admitted at trial "was relevant in that it corroborated complainant's testimony"); *Clifford v. State,* 474 N.E.2d 963, 970 (Ind. 1985) (finding no error in trial court's ruling that pornographic evidence was admissible to corroborate victim's testimony where victim testified the defendant showed her sexually explicit magazines and videos); *Jones v. Commonwealth,* 237 S.W.3d 153, 160 (Ky. 2007) (noting that identification by the victim of specific pornographic images shown to him or her by the defendant is required before those images may be introduced to the jury in a sexual abuse case); *State v. Rael,* 364 S.E.2d 125, 129 (N.C. 1988) (concluding there was no error in the admission of a pornographic "video tape and magazines [because they] were relevant to corroborate the victim's testimony that the defendant had shown him such materials at the time the defendant committed the crimes for which he was on trial"); *State v. Daniel,* 647 N.E.2d 174, 187 (Ohio Ct. App. 1994) (noting that the admission of an explicit video was relevant because the "fact that appellant had any such videos in his possession substantiated the testimony of the victims and showed that appellant had access to such materials"); *State v. Rood,* 848 P.2d 128, 131 (Or. Ct. App. 1993) (holding the trial court did not err in admitting two x-rated videos where the victims testified they had been shown pornography by defendant and, therefore, the videos "corroborated [the victims'] description of the circumstances and events surrounding the crimes").

The majority of the opinions cited above address the admission of the actual pornographic material itself--not just evidence describing the material--and conclude that the probative value of the evidence was not substantially outweighed by unfair prejudice. Furthermore, and contrary to Rossignol's argument, which contains no citation to authority, only one of those many jurisdictions appears to require that the connection between the pornography admitted at trial and the crime be as specific as the victim identifying the particular pornographic image used during, or related to, the sexual abuse. *See Jones,* 237 S.W.3d at 160.

Similarly, at a trial for sexual abuse, incest stories may be admissible as relevant to a defendant's intent and motive to have a sexual relationship with his daughter. *State v. Ramsey,* 124 P.3d 756, 767 (Ariz. Ct. App. 2005). In that case, the defendant, who was on trial for sexually abusing his daughter, argued that the incest stories found at his house were inadmissible

character evidence and that the probative value of the stories was substantially outweighed by the danger of unfair prejudice. On appeal, the Arizona Court of Appeals agreed with the trial court that the evidence was relevant to the defendant's intent and motive and that the probative value of the evidence was not substantially outweighed by unfair prejudice. *Ramsey,* 124 P.3d at 768. *See also People v. Paull*, 531 N.E.2d 1008, 1009 (Ill. Ct. App. 1988) (affirming the trial court's admission into evidence of three books concerning incest and concluding that the probative value was not substantially outweighed by unfair prejudice).

At the hearing on Rossignol's motions in limine, the district court initially concluded that the pornography was admissible to corroborate the victim's testimony, to prove the intent element of the crimes Rossignol was charged with, and to prove opportunity. With respect to the incest stories, the district court opined:

> I--as I understand the defense in this case, it is that this is something that has been made up by [the victim], that it's either a figment of her imagination or she is relating to prior experiences that occurred and it seems to me it corroborates what she says occurred. You have on the computer under the name of the father, stories of fathers molesting daughters and it seem[s] to me it's highly probative. Is it prejudicial, you bet it is, but I don't think it's unfairly prejudicial.

The district court then entered a written order specifically addressing several of the cases relied on by Rossignol. That order concludes:

> Contrary to the contention of Mr. Rossignol, [the victim] has identified pictures that were shown to her by her father on his computer as ones in which there is vaginal touching, oral sex and other forms of touching. State's Exhibit[s] A and B. In addition, the incest stories were downloaded from the internet website and the file that they were saved in identified Donald Rossignol as the user. State's Exhibit[s] C, D, E. This evidence corroborates the testimony of [the victim] and as such is relevant.

Rossignol has not shown that the district court erred. Although the computer forensic examiner testified at trial that some 800 movies--over half of which were pornography--and that between 18,000 and 38,000 still pictures or graphics--about half of which were pornography--were retrieved from Rossignol's computer, only a handful of the pornographic images were admitted at trial. Similarly, of the eleven incest stories that were retrieved from Rossignol's computer, only three stories--those involving father and daughter sexual relationships--were admitted at trial. The pornographic images were relevant because they corroborated the victim's testimony that she was shown pornography prior to and during the

8

sexual abuse.  The incest stories were relevant to the intent element of the crimes Rossignol was charged with and to show Rossignol's motive and plan to engage in sexual acts with his daughter.  Finally, Rossignol has not demonstrated that the district court abused its discretion in concluding that the probative value of the evidence was not substantially outweighed by unfair prejudice.

### 3. Due process and confrontation clause violations

Rossignol argues that his due process rights were violated when the district court altered its pretrial ruling on the admissibility of certain evidence without a change in circumstances.  Specifically, Rossignol contends the district court determined before the trial that the transcript from an interview between a detective and the victim was inadmissible and later, during trial, admitted that transcript without a change in circumstances.  Rossignol contends that he relied on the district court's pretrial ruling, foregoing much cross-examination of the victim, and that therefore the district court's decision to allow the transcript in at trial violated his right to due process and to confront the victim.  The state contends that there was no inconsistency between the district court's pretrial and trial rulings on the admissibility of the evidence and that the court's ruling did not substantively affect Rossignol's ability to present his defense, in part because the district court offered a limiting instruction and because the district court informed Rossignol that he could recall the victim for additional cross-examination.

Where a defendant claims that his or her right to due process was violated, we defer to the trial court's findings of fact, if supported by substantial evidence.  *State v. Smith*, 135 Idaho 712, 720, 23 P.3d 786, 794 (Ct. App. 2001).  However, we freely review the application of constitutional principles to those facts found.  *Id.*

Before the first trial in this case, the district court was asked to determine whether prior consistent statements made by the victim to a number of different individuals were admissible.  The district court concluded that the evidence was not admissible unless Rossignol offered evidence that the victim had recently fabricated her account of the abuse or had a motive to fabricate her story.  Prior to the second trial, Rossignol argued that the district court's ruling before the first trial should control the admission of the evidence; namely, that evidence of the prior consistent statements by the victim was not admissible unless the defense raised an argument that opened the door.  In response, the state argued that the evidence of the prior consistent statements by the victim should be admissible in its case-in-chief pursuant to I.R.E.

9

803(24)[1] because the prior statements were more reliable than the victim's trial testimony (due to the lapse in time between the abuse and the second trial), more probative of whether the abuse actually occurred, and because the evidence contained the necessary circumstantial guarantees of trustworthiness. The district court concluded that, with the exception of the statements made to the victim's mentor, the other prior consistent statements were not admissible, largely because the district court considered them to be repetitive accounts of the same testimony expected by the victim at trial.

During trial after Rossignol rested, the state sought to introduce for rebuttal purposes a transcript of the interview between the victim and the detective. The state argued:

> This is not being offered for the truth of the matter asserted, so it's not hearsay. It's being offered to rebut [Rossignol's] argument that [the victim] fabricated the story, and you can tell that because of the use of the words massage and the use of the words hole. Obviously [the victim] used a lot more words during her interview with [the detective], and the jury should be entitled to know what words she used so that they can wholly analyze that defense, whether to believe it or not. And again, it's not being offered for the truth of the matter asserted. I would have no objection to a limiting instruction being read to the jury at the time this comes in saying that they can't consider it for the truth, and it's only to be considered and the State's offering it only for the rebuttal purposes for the use of the words massage and hole.

The district court noted:

> A key part of your defense, [defense counsel], is that the only way [the victim] could have invented [the allegations of abuse] is because of her experience in Wyoming. That, there was nothing that happened when she came to Moscow that would have enabled her to have given the tale that she did, and I think this directly rebuts that.

---

[1]    Idaho Rule of Evidence 803(24) provides, in pertinent part:

> A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

10

The district court admitted the transcript as evidence of a prior consistent statement by the victim to rebut the defense that the victim had learned the terminology surrounding sexual abuse from her experiences in Wyoming.

Rossignol filed a motion for reconsideration asking the district court to exclude the transcript. Rossignol argued that the district court was changing its pretrial ruling, where it ruled that the evidence was inadmissible as cumulative hearsay, and that such a change violated his due process rights because he had relied on the pretrial ruling and his Confrontation Clause rights because he had foregone some cross-examination of the victim.

The district court disagreed with Rossignol's assessment of its rulings. The district court denied Rossignol's motion for reconsideration, concluding:

> Well, first of all, I don't think it's inconsistent with my in-limine rulings. The prior [consistent] statements were kept out of substantive evidence. The last trial they were admitted as substantive evidence of proof of the matter, the fact of matter of the fact for which it is offered. That is not the reason that I let it in this time. It was let in--the State is entitled to rebut your defense, and your defense has been and consistently has been that [the victim] learned about all of this in Wyoming. She couldn't have learned of it at her home with Donald Rossignol. I think the State is entitled to know that she was familiar with terms and experiences that transcend what the evidence is that occurred in Wyoming. They are entitled to rebut. I don't think it's inconsistent at all. I think it's perfectly consistent. One is offered for the proof of the matter asserted, and the other is not submitted for that but rather what her knowledge was containing certain terms and descriptions. So, I don't agree with you. . . . . You are entitled to call [the victim]. I told you that from the beginning. You can call her back. I would have her called back. If you want to do that, you may. I don't think the dynamic has changed at all. If you want to examine her about how much she knew in Wyoming and how much she didn't know you're entitled to ask that. That's your defense. I'm not going to impede your ability to do that in any respect. But I'm comfortable with my ruling.

The district court offered an oral limiting instruction to the jury at the time that the evidence was admitted. The district court told the jury:

> I'm going to allow Exhibit 25A in, and I'm going to tell you that you are not, and I emphasize--I really emphasize you are not to consider it for the truth of the matter. This exhibit is being--is coming in to show you the terms that [the victim] used when she described what she says occurred to her, so that you have the context of what she knew and how she was using terms here as distinguished from when she was in Wyoming. And it's only being admitted for that purpose, so you will understand. Is there anybody that has any questions about that?

A similar written limiting instruction was also provided to the jury. That instruction reads:

> I have admitted State's Exhibit 25A, a partial transcript of an interview of [the victim] by [the detective], for only one purpose. I have admitted it as evidence of the words and phrases [the victim] used to describe sexual parts of the body and actions involving those parts of the body. You may not consider this evidence for any other purpose.
>
> This means you may not use State's Exhibit 25A as evidence that any of the events [the victim] described in it actually happened.

We conclude that there is no inconsistency shown by Rossignol between the district court's pretrial ruling and its decision to admit the transcript at trial. Rossignol's defense was largely that the victim had learned the sexual abuse terms in Wyoming. The district court admitted the transcript of the interview between the detective and the victim to rebut that defense. Specifically, the transcript showed that the victim used terminology that was in addition to, and different than, the terms she was exposed to in Wyoming. The district court's in limine rulings provided for such admission. Furthermore, the district court twice instructed the jury that the transcript was not to be used as evidence that what the victim stated occurred actually took place. *See State v. Kilby,* 130 Idaho 747, 751, 947 P.2d 420, 424 (Ct. App. 1997) (noting that we presume that the jury followed the district court's instructions). Therefore, we find no due process violation.

Similarly, contrary to Rossignol's contention, there was no Confrontation Clause violation. Although Rossignol may have proceeded more cautiously during cross-examination of the victim than he would have if he had known the evidence was going to be admitted on rebuttal, the district court offered Rossignol the opportunity to recall the victim after the transcript was admitted. Rossignol declined the district court's invitation to present surrebuttal or recall the victim. Rossignol was not denied his right to due process nor was there a Confrontation Clause violation by the district court's admission of the transcript of the interview between the victim and the detective.

### 4. Psychotherapist-patient privilege

Rossignol argues that the district court erred in its interpretation of an exception to a rule of evidence and its decision not to allow Rossignol the opportunity to extensively question the victim's treating psychologist during a hearing to determine if the victim was competent to testify at trial. In response, the state argues that the exception to the evidentiary rule does not

eliminate the privilege where the child is the patient because it is designed to protect the welfare of children, that Rossignol's broad interpretation is contrary to a child's constitutionally protected privacy interest, and that any error is harmless because the victim was determined to be competent and ultimately testified at trial.

The interpretation of the rules of evidence is a question of law over which we exercise free review. *See State v. Young,* 136 Idaho 113, 119, 29 P.3d 949, 955 (2001). Idaho Rule of Evidence 503 governs the physician and psychotherapist-patient privilege. The relevant part of that rule provides:

> A patient has a privilege in a criminal action to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of diagnosis or treatment of the patient's mental or emotional condition, including alcohol or drug addiction, among the patient, the patient's psychotherapist, and persons who are participating in the diagnosis or treatment under the direction of the psychotherapist, including members of the patient's family.

I.R.E. 503(b)(2). The relevant exception to the rule for child-related communications provides:

> There is no privilege under this rule in a criminal or civil action or proceeding as to a communication relevant to an issue concerning the physical, mental or emotional condition of or injury to a child, or concerning the welfare of a child including, but not limited to the abuse, abandonment or neglect of a child.

I.R.E. 503(d)(4).

The exception to the psychotherapist-patient privilege has been applied to any communication a defendant made "to his [or her] psychologist or counselor that is relevant to an issue concerning [an] allegation of sexual abuse" that is the basis of a criminal charge. *Young,* 136 Idaho at 119, 29 P.3d at 955. In that case, Young was given a deferred prosecution on a sex charge in another state. Part of the agreement for the deferred prosecution required Young to attend an evaluation with a mental healthcare provider. Later, Young was charged with inappropriate sexual contact with his daughter in Idaho. Young filed a motion in limine to exclude any evidence related to his evaluation with the mental healthcare provider. The district court granted Young's motion concluding that the exception to the rule did not "apply 'to counseling where a patient is earnestly trying to recognize and solve personal problems and a child is not in immediate or pending danger concerning his or her welfare.'" *Id.* The Supreme Court reversed, concluding that the exception to the psychotherapist-patient privilege did apply

13

as it contained no provisions excluding communications that were made during the course of earnestly seeking treatment or when there is no immediate danger to the child.

In this case, a hearing was held to determine whether the victim was competent to testify at Rossignol's trial. Prior to the hearing, Rossignol served the Idaho Department of Health and Welfare and the victim's treating psychologist--who worked for the Department--with a subpoena duces tecum. Rossignol's subpoena ordered the psychologist to attend the hearing on the victim's competency and to bring any record the Department had regarding the victim's diagnosis or treatment. Prior to the hearing, the victim objected to any questioning regarding her diagnosis or treatment pursuant to the psychotherapist-patient privilege. Rossignol argued that the child-related communications exception applied and that he should be allowed to question the psychologist. The district court began by explaining:

> I read the rule on privilege when it involves abuse of children to be aimed at . . . permitting people who are aware of abuse to report it. I do not interpret it as waiving the privilege as to treatment once the abuse has been identified. And I think [the psychologist] comes under the latter category.

After hearing additional argument, the district court ultimately concluded that Rossignol would not be allowed to see the records from the Department, but that he could question the psychologist regarding the victim's competency. Specifically, the district court concluded:

> I will only allow [questioning] in terms of [the victim's] diagnosis and the extent to which that would affect her competency. We're here to determine [the victim's] competency. We're not here to determine whether her treatment is good or bad or what information has been received by a treatment provider in order to provide that treatment. I want to keep the focus on competency, okay.

There are no Idaho cases where a *defendant* has attempted to invoke the exception to the psychotherapist-patient privilege in order to gain more information about the *victim's* treatment in a sexual abuse case where the abuse was already reported. However, the Idaho Supreme Court analyzed an almost identical exception contained in the evidentiary rule governing the marital privilege. *See Moore,* 131 Idaho at 822, 965 P.2d at 182. The exception, I.R.E. 504(d)(1), to the privilege in that case provided:

> In a criminal or civil action or proceeding as to a communication relevant to an issue concerning the physical, mental or emotional condition of or injury to a child, or concerning the welfare of a child including, but not limited to the abuse, abandonment or neglect of a child.

14

In *Moore,* the Supreme Court reviewed the exception and concluded that "a more reasonable reading of the rule is that it applies only to matters directly related to the welfare of a child." *Moore,* 131 Idaho at 822, 965 P.2d at 182.

The interpretation of the privilege found in *Moore* corresponds with several statutory enactments designed to protect children and allow certain privileges to yield when child abuse has been discovered and needs to be reported. *See* I.C. § 9-203(4)(A) (discussing the physician-client privilege and concluding that "nothing herein contained shall be deemed to preclude physicians from reporting of and testifying at all cases of physical injury to children, where it appears the injury has been caused as a result of physical abuse"); I.C. § 16-1601 (discussing the policy behind the Child Protective Act and noting that "the policy of the state of Idaho is hereby declared to be the establishment of a legal framework conducive to the judicial processing including periodic review of child abuse . . . . At all times the health and safety of the child shall be the primary concern"); I.C. § 16-1605(1) (imposing mandatory reporting of child abuse for any "physician, resident on a hospital staff, intern, nurse, coroner, school teacher, day care personnel, social worker, or other person having reason to believe" child abuse has occurred); I.C. § 67-1405 (imposing duties on various state agencies to report instances of child sexual abuse to the attorney general and the attorney general's duty to prepare and submit that data to the legislature).

California courts have wrestled with the competing interests of protecting the privilege while discovering and preventing instances of child abuse. A California Court of Appeals has noted that the psychotherapist-patient privilege reflects a patient's constitutional right to privacy and should be broadly construed. *People v. John B.,* 192 Cal. App. 3d 1073, 1076-77 (Cal. Ct. App. 1987). However, the Court concluded that "the privilege is not absolute and must yield in the face of compelling state interests such as the *detection and prevention* of child abuse." *Id.* at 1077 (emphasis added).

A later California court weighed the competing interests, noting:

> We believe that in a case such as this, where the father is accused of child [molestation], and the child is in therapy, presumably to deal with the emotional aftermath of the alleged [molestation], the accused parent should not be entitled to access to the communications made by the child to the therapist. The child has at stake a substantial privacy interest, and we can foresee substantial emotional harm to the child from a forced disclosure in these circumstances.

*In re v. Daniel C. H.,* 220 Cal. App. 3d 814, 828 (Cal. Ct. App. 1990). The *Daniel* Court concluded that the child had a right to invoke and maintain the privilege concerning his communications with the psychotherapist. *Id.*

We agree with the reasoning of the district court, the analysis set forth in California case law, and the need to protect the privileged communications from a victim to a psychologist. We are convinced that the purpose behind the exception is to encourage the *disclosure* of abuse, and that Rossignol has shown no error. To the extent that the language "there is no privilege under this rule in a criminal . . . action or proceeding as to a communication relevant to an issue concerning the physical, mental or emotional condition of or injury to a child," I.R.E. 503(d)(4), dictates an opposite result, we further conclude Rossignol has failed to demonstrate that a substantial right was infringed upon.

Error is not reversible unless it is prejudicial. *State v. Stoddard*, 105 Idaho 169, 171, 667 P.2d 272, 274 (Ct. App. 1983). With limited exceptions, even constitutional error is not necessarily prejudicial error. *Id.* Thus, we examine whether the alleged error complained of in the present case was harmless. *See State v. Lopez*, 141 Idaho 575, 578, 114 P.3d 133, 136 (Ct. App. 2005). Any defect or irregularity in criminal proceedings, which does not affect substantial rights of the parties, is to be disregarded and does not constitute a ground for reversal. I.C.R. 52; *State v. Brown*, 131 Idaho 61, 71, 951 P.2d 1288, 1298 (Ct. App. 1998); *State v. Rivas*, 129 Idaho 20, 27, 921 P.2d 197, 204 (Ct. App. 1996).

Rossignol has not demonstrated that the district court's ruling prejudiced him. Rossignol's only assertion of any prejudice is the vague statement that, "since the psychologist's testimony would go both to trial evidence and the determination of whether [the victim] was even competent to testify, the convictions should be reversed and the matter remanded for a new trial." Although Rossignol may have been attempting to use the competency hearing as a discovery proceeding for trial evidence, as noted by the district court the purpose of that hearing was to determine the competence of the victim. Rossignol was allowed to question the victim's psychologist about issues related to the victim's competence to testify. The victim did testify and Rossignol was provided the opportunity to cross-examine her. Therefore, even assuming a reading of the exception to the psychotherapist-patient privilege required a different ruling in this case, any error by the district court was harmless.

**B.      Reasonable Doubt Instruction**

Rossignol argues that the district court committed error when instructing the jury. Specifically, Rossignol argues that the reasonable doubt instruction was flawed because it purported to outline the elements of the offense, but did not do so, and because it did not inform the jury that the law never imposes a burden or duty on the defendant of calling any witnesses or producing any evidence. The state argues that Rossignol's jury instruction claims fail because the reasonable doubt instruction given by the district court correctly conveyed the concept of reasonable doubt as provided in the pattern instruction and because the instructions were not misleading and did not diminish the state's burden of proof.

The question whether the jury has been properly instructed is a question of law over which we exercise free review. *State v. Gleason*, 123 Idaho 62, 65, 844 P.2d 691, 694 (1992). When reviewing jury instructions, we ask whether the instructions as a whole, and not individually, fairly and accurately reflect applicable law. *State v. Bowman*, 124 Idaho 936, 942, 866 P.2d 193, 199 (Ct. App. 1993). When reviewing a reasonable doubt instruction, the Constitution does not dictate that any particular form of words be used in advising the jury of the state's burden of proof, so long as the instructions correctly convey the concept of reasonable doubt. *State v. Sheahan,* 139 Idaho 267, 273, 77 P.3d 956, 962 (2003). The pattern Idaho Criminal Jury Instructions (ICJI) are presumptively correct. *State v. Ruel,* 141 Idaho 600, 602, 114 P.3d 158, 160 (Ct. App. 2005).

Idaho Criminal Jury Instruction 103 reads:

> A defendant in a criminal action is presumed to be innocent. This presumption places upon the state the burden of proving the defendant guilty beyond a reasonable doubt. Thus, a defendant, although accused, begins the trial with a clean slate with no evidence against the defendant. If, after considering all the evidence and my instructions on the law, you have a reasonable doubt as to the defendant's guilt, you must return a verdict of not guilty.
> Reasonable doubt is defined as follows: It is not mere possible doubt, because everything relating to human affairs, and depending on moral evidence, is open to some possible or imaginary doubt. It is the state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction, to a moral certainty, of the truth of the charge.

In this case, the district court provided the jury with the following reasonable doubt instruction:

A defendant in a criminal action is presumed to be innocent. Thus, although accused, the defendant begins this trial with a clean slate. In addition the defendant has a constitutional right not to testify and you are to draw absolutely no inferences against him/her if he/she exercises his/her right to remain silent.

The State must prove all the material elements of the offense charged in the Information to be true beyond a reasonable doubt before the defendant can be found guilty. In order to help you in your duties as jurors I am going to outline for you the elements of the crime for which the defendant has been charged.

The State must prove that on unknown dates between January, [sic] 2005 and September, [sic] 2005 in Idaho that Mr. Rossignol did commit lewd conduct with a minor under sixteen years of age as described in three of the counts against him and that he sexually abused a child as described in the remaining count.

It is not necessary for the state to establish every fact and circumstance put in evidence beyond a reasonable doubt, but it is necessary to sustain a conviction that the facts and circumstances in evidence, when taken together, establish beyond a reasonable doubt each of the material elements of the offense that I have outlined.

Reasonable doubt is defined as follows: It is not mere possible doubt, because everything relating to human affairs, and depending on moral evidence, is open to some possible or imaginary doubt. It is the state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction, to a moral certainty, of the truth of the charge.

Rossignol argues that the district court erred in giving the above instruction because the instruction states that it will "outline" the elements of the two crimes, but it does not contain the elements. Although we agree with Rossignol's argument that the instruction does not specifically do what it purports to do, we find no error when reviewing the instructions as a whole. Included within the instructions given to the jury are separate instructions containing all of the elements for lewd conduct and sexual abuse. Furthermore, after outlining the elements for each charge, both instructions state:

If any of the above has not been proven beyond a reasonable doubt, then you must find the defendant not guilty. If each of the above has been proven beyond a reasonable doubt, you must find the defendant guilty.

Although we find no error in the district court's unfortunate choice of the phrase "outline for you the elements of the crime" in its reasonable doubt instruction, we take this opportunity to reiterate that deviations from the pattern ICJI "have created unnecessary controversies with nothing added by way of clarity. . . . Trial courts are encouraged to avoid unnecessary appeals

and controversy by utilizing the instruction that has an accepted history defining the burden the State bears." *Sheahan,* 139 Idaho at 275, 77 P.3d at 964.

Next, Rossignol argues that the reasonable doubt instruction offered by the district court was incorrect because it did not inform the jury that the law never imposes on the defendant the burden or duty of calling any witnesses or producing any evidence and that this error was compounded because the jury was also instructed to compare all of the evidence. Rossignol contends that, because the jury was not instructed that he had no duty to provide evidence, the instruction to compare all the evidence impermissibly shifted the burden of proof.

Again, we disagree with Rossignol's argument. In this case, the jury was instructed that Rossignol had a constitutional right not to testify. Furthermore, the statement Rossignol contends is missing from the district court's reasonable doubt instruction--that the defendant has no burden or duty of calling any witnesses or producing any evidence--is not contained in the pattern ICJI. Furthermore, the pattern ICJI does contain the phrase "after the entire comparison and consideration of all the evidence." Therefore, we conclude that Rossignol's jury instruction arguments in this regard are without merit.

## C.    Cumulative Error

Rossignol asserts that the cumulative error doctrine entitles him to a new trial. The cumulative error doctrine refers to an accumulation of irregularities, each of which by itself might be harmless, but when aggregated, show the absence of a fair trial in contravention of the defendant's right to due process. *Moore*, 131 Idaho at 823, 965 P.2d at 183. The presence of errors alone, however, does not require the reversal of a conviction because, under due process, a defendant is entitled to a fair trial, not an error-free trial. *Id.* Because we have assumed only one error that related to the competency hearing and found it harmless, the doctrine of cumulative error is inapplicable in this case.

## III.
## CONCLUSION

The district court did not err in concluding the evidence of Rossignol's flight was relevant and that the probative value was not substantially outweighed by the danger of unfair prejudice. Similarly, the district court did not err in admitting some of the pornography and incest stories found on Rossignol's computer, nor did it abuse its discretion in determining the probative value of that evidence was not outweighed by unfair prejudice. Rossignol's right to

due process was not violated by the district court's admission of the transcript of the interview between the victim and the detective. The district court correctly concluded that the exception to the psychotherapist-patient privilege was inapplicable to the facts in this case. However, even if error, because Rossignol was allowed to question the victim's psychologist about issues related to the victim's competence to testify, we conclude any error was harmless. The district court properly instructed the jury on the reasonable doubt standard, and the doctrine of cumulative error is inapplicable. Accordingly, Rossignol's judgment of conviction for three counts of lewd conduct with a minor under sixteen years of age, sexual abuse of a child, and being a persistent violator is affirmed.

Judge GUTIERREZ and Judge GRATTON, **CONCUR.**