**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 41288**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2015 Opinion No. 4 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: January 15, 2015 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| RUSSELL ALLEN PASSONS, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Richard S. Christensen, District Judge.

Judgment of conviction for two counts of aggravated assault and one count of burglary, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Jason Pintler, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Daphne J. Huang, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Judge

Russell Allen Passons appeals from his judgment of conviction for two counts of aggravated assault, Idaho Code §§ 18-901, 18-905, and one count of burglary, I.C. § 18-1401. Passons argues the district court erred by admitting character evidence unrelated to the charged crimes, and by denying his motions for a mistrial. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

The State charged Passons with two counts of aggravated assault and one count of burglary. The information also alleged Passons used a deadly weapon (a knife) while committing the aggravated assaults, and that Passons was a persistent violator of the law. The State alleged that Passons entered a retail store in Post Falls and took a car seat and stroller combination (stroller) without paying for it and placed it in his car. Passons then re-entered the store, placed a television into a shopping cart, and again exited without paying. However, two

1

store employees observed Passons exit without paying and confronted him in the parking lot. These employees asserted that Passons pulled a knife and pointed it at them and then ran to his car and drove away, leaving the television in the shopping cart. Before trial, the State filed notice of its intention to introduce evidence pursuant to Idaho Rule of Evidence 404(b).

The I.R.E. 404(b) evidence consisted of events that allegedly occurred the day after the incident in Post Falls. Passons, accompanied by two new acquaintances, went to the same retail chain located in Ponderay to return the stroller for store credit. The woman who accompanied Passons into the store attempted to return the stroller, but was denied. Passons, who had also entered the store, was identified by a store employee as the individual who had stolen the stroller at the other store in Post Falls. The employee called the police. By the time the police arrived, Passons and the two individuals had driven away. However, the officers soon identified Passons' vehicle and began pursuit. Passons fled, but ultimately crashed the vehicle and was apprehended. Passons objected to the introduction of the evidence, arguing it was not relevant to what allegedly occurred the previous day, the burglary, or the aggravated assault charges, and it would allow the jury to convict on the basis of Passons' character. Passons also argued that the evidence had little probative value and any value was outweighed by its prejudicial impact. The district court concluded the evidence was admissible as part of a continuation of the crime alleged to have occurred the previous day. Further, the evidence could be used to establish Passons' motive and intent to commit the theft when returning to the store to take the television.

During voir dire, a juror commented that based on Passons' tattoos, she could not remain unbiased because she believed the tattoos indicated he had been repeatedly incarcerated. The judge excused the juror. Passons made a motion for a mistrial based on the juror's comments. The district court denied the motion.

The State presented the following evidence at trial: An asset protection associate from the Post Falls store testified that he observed Passons load a 37-inch flat screen television into a shopping cart, briefly stop in the bicycle aisle, then exit the store without paying. He testified that he and another associate followed Passons into the parking lot where they confronted him. Passons responded to the employees: "I ain't stopping for sh--. Fu-- you. You can't touch me." The associate then described how Passons pulled out a folding knife from his right front pocket, opened the blade, pointed the knife at them briefly, and then ran to his car. The associate called police and followed Passons to his car, where he observed the stroller in the car. The television

was recovered, but the UPC and shipping label had been cut from the box. The associate also described surveillance video showing Passons taking the stroller to his vehicle, and Passons attempting to take the television from the store. The associate acknowledged that the store has a policy requiring employees to disengage with suspected shoplifters whenever the suspect displays a weapon.

The State submitted video clips of Passons taking the stroller without paying and placing it in his car. The surveillance video showed Passons taking the television as described in the associate's testimony. However, there is no video of the confrontation between Passons and the two store employees in the parking lot. The associate testified that sun glare prevented the video from being viewable, so he decided not to save that video.

The second asset protection associate testified that he saw Passons exit the store without paying for the television, and likewise described the confrontation wherein Passons pulled out the knife and pointed it at them. The associate also testified that he found the UPC and serial number that had been cut from the television box in the bicycle aisle.

The remaining testimony dealt with the events taking place the following day. The asset protection manager at the Ponderay store testified that he saw Passons in the store and recognized him from a report regarding the Post Falls incident. He called police after observing Passons exit the store with a female and place a stroller into the car and drive away. The woman who attempted to return the stroller testified that she and her boyfriend met Passons that day and agreed to attempt to return the stroller. The woman and Passons entered the store while her boyfriend waited in the vehicle. Unable to return the stroller, she left with Passons in a hurry. She explained that they were chased by police for approximately twenty to twenty-five minutes before the car, driven by Passons, hit a curb and blew out the front passenger-side tire. The three were removed from the car at gunpoint.

Finally, an officer testified that she was one of the officers who pursued Passons as he fled from police. Unprompted by the prosecutor, the officer testified that she was following a robbery suspect. Defense counsel objected and again sought a mistrial. The district court denied the motion, instead providing a curative instruction. The officer went on to explain that the pursuit lasted approximately seven minutes, and after Passons crashed the car, they recovered the stroller and a set of building blocks.

3

The State's presentation of evidence and argument indicated the burglary was a result of Passons entering the store the second time to steal the television. The jury convicted Passons of one count of burglary and two counts of aggravated assault. Passons waived his right to a jury trial on the allegation of use of a weapon and being a persistent violator. The district court found that Passons had used a deadly weapon during the commission of the aggravated assaults. However, the court found there was insufficient evidence that Passons had two or more prior felony convictions. Passons timely appeals.

## II.

## ANALYSIS

Passons argues the district court abused its discretion by allowing testimony relating to his actions the day after the charged crimes. Passons also argues the district court erred in failing to grant his motions for a mistrial. Finally, Passons contends that the various alleged errors at trial combined to deprive him of his right to a fair trial.

### A. Character Evidence

Passons argues the testimony of the events that occurred the day after the charged offense was inadmissible character evidence. He also argues that even if the evidence was not improper as character evidence, the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. The evidence rule in question, I.R.E. 404(b), provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that the prosecution in a criminal case shall file and serve notice reasonably in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

This rule prohibits introduction of evidence of acts other than the crime for which a defendant is charged if its probative value is entirely dependent upon its tendency to demonstrate the defendant's propensity to engage in such behavior. *State v. Grist*, 147 Idaho 49, 54, 205 P.3d 1185, 1190 (2009); *see also State v. Avila*, 137 Idaho 410, 412, 49 P.3d 1260, 1262 (Ct. App. 2002). Of course, evidence of such a crime, wrong, or act may implicate a person's character while also being relevant and admissible for some permissible purpose, such as those listed in the rule. *See State v. Pepcorn*, 152 Idaho 678, 688-89, 273 P.3d 1271, 1281-82 (2012).

4

When determining the admissibility of evidence to which a Rule 404(b) objection has been made, the trial court must first determine whether there is sufficient evidence of the other acts that a reasonable jury could find the conduct actually occurred. If so, then the court must consider: (1) whether the other acts are relevant to a materially disputed issue concerning the crime charged, other than propensity; and (2) whether the probative value is substantially outweighed by the danger of unfair prejudice. *Grist*, 147 Idaho at 52, 205 P.3d at 1188; *State v. Parmer*, 147 Idaho 210, 214, 207 P.3d 186, 190 (Ct. App. 2009). On appeal, this Court defers to the trial court's determination that there is sufficient evidence of the other acts if it is supported by substantial and competent evidence in the record. *Parmer*, 147 Idaho at 214, 207 P.3d at 190. In this case, Passons does not allege that there was insufficient evidence to establish that the act occurred. Therefore, we address only the relevancy and unfair prejudice issues. We exercise free review, however, of the trial court's relevancy determination. *State v. Sheldon*, 145 Idaho 225, 229, 178 P.3d 28, 32 (2008). The trial court's balancing of the probative value of the evidence against the danger of unfair prejudice will not be disturbed unless we find an abuse of discretion. *State v. Norton*, 151 Idaho 176, 190, 254 P.3d 77, 91 (Ct. App. 2011).

### 1.    Motive and intent

Passons argues the district court erred by concluding the attempt to return the stroller and subsequent flight from law enforcement was relevant to establish the motive and intent of the crime of burglary. "Motive is generally defined as that which leads or tempts the mind to indulge in a particular act." *Pepcorn*, 152 Idaho at 689, 273 P.3d at 1282 (quoting *State v. Stevens*, 93 Idaho 48, 53, 454 P.2d 945, 950 (1969)). As to intent, the jury was instructed that in order to find Passons guilty of burglary, it had to find that "[a]t the time entry was made, [Passons] had the specific intent to commit the crime of theft."[1] *See also* I.C. § 18-1401. Passons concedes that evidence showing he entered the store and took the stroller without paying was relevant to whether he had the intent to commit theft when he re-entered the store to take the television. However, Passons argues that returning the stroller the next day did not have any tendency to make a disputed fact more or less likely. The State asserts that returning the stroller shows that Passons' motive in entering the store was to steal items from the store and then return

---

[1]    The State has not asserted that returning the stroller related to the requisite intent for the aggravated assault charges.

the items for store credit, which would also support the State's contention that when he re-entered the store he had the intent to commit a theft. We agree. Returning the stroller tended to show Passons had a plan upon entering the store to obtain an item of value and to later return it to a different store. Passons also put his intent squarely at issue by arguing in his opening statement: "this is a petty theft case that's been blown way out of proportion." During closing arguments, Passons' counsel again argued that Passons did not commit burglary, arguing that this case was a petty theft case. Thus, it was proper for the State to introduce evidence to establish that it was part of Passons' plan to steal items before he entered the store. *See State v. Brummett*, 150 Idaho 339, 343, 247 P.3d 204, 208 (Ct. App. 2010) (holding evidence of previous thefts from store was relevant to show intent to commit theft when entering store). Passons argues that because the acts occurred after he entered the store, the events were not relevant to establish motive or intent. This ignores that the motive of stealing the stroller, and thus likely the motive to steal the television, was part of Passons' plan to obtain store credit which was established by providing evidence that Passons attempted to return the stroller. The evidence directly challenged Passons' defense that he merely committed petty theft.

However, we cannot agree with the district court's conclusion that the subsequent flight from officers tended to show a motive or intent to enter the store to steal the television. Whether Passons fled from officers the day after he entered the store to steal the television has no bearing on what his intent or motive was upon entering the store the previous day. Thus, only the testimony of returning the stroller was relevant to show a motive or intent.

### 2. Consciousness of guilt

The State argues that the evidence of Passons fleeing from officers showed a consciousness of guilt.[2] Evidence of escape or flight may be permissible under Rule 404(b) to show knowledge or consciousness of guilt. *State v. Pokorney*, 149 Idaho 459, 463, 235 P.3d 409, 413 (Ct. App. 2010); *State v. Rossignol*, 147 Idaho 818, 821, 215 P.3d 538, 541 (Ct. App. 2009). However, the inference of guilt may be weakened when a defendant harbors motives for escape other than guilt of the charged offense. *Rossignol*, 147 Idaho at 821, 215 P.3d at 541. Passons acknowledges his flight may have shown a consciousness of guilt for attempting to

---

[2]     Where a ruling in a criminal case is correct, though based upon an incorrect reason, it still may be sustained upon the proper legal theory. *State v. Pierce*, 107 Idaho 96, 102, 685 P.2d 837, 843 (Ct. App. 1984).

return the stroller, but argues it did not convey a consciousness of guilt to the charged offenses of burglary and aggravated assault. However, this Court has previously held "that the existence of alternative reasons for the escape or flight goes to the weight of the evidence and not to its relevance or admissibility." *Id.* at 823, 215 P.3d at 543. Passons' flight from officers, though likely in part dealing with his attempt to return the stolen stroller, is also reasonably seen as an attempt to avoid prosecution for stealing the stroller, attempting to steal the television, and threatening the store employees with a knife. Passons' conduct the previous day put him at risk of prosecution for a number of crimes, and his flight from the same retail store chain the subsequent day was admissible evidence to establish a consciousness of guilt.

### 3. Balancing weight of evidence

Passons argues that evidence of his returning the stroller the following day and fleeing from officers was overly prejudicial because it would lead jurors to render the decision based upon evidence that he is of ill-character, rather than on the evidence in connection with the crimes he was actually charged with. The jury watched the video of Passons leaving the store without paying for the stroller. To learn that he subsequently attempted to return the stolen stroller for store credit could have only slightly impugned Passons' character beyond what occurred from the jury watching the video of him stealing the stroller. Thus, the testimony had little prejudicial effect. Further, evidence that Passons attempted to return the stroller was relevant to his motive, and provided context to the events that led to his flight from officers.

Passons likewise argues that evidence of his fleeing from officers prejudiced him by allowing the jury to convict based on this misconduct. However, Passons has failed to show how this evidence is *unfairly* prejudicial. Evidence is unfairly prejudicial when it suggests a decision was made on an improper basis. *Pokorney*, 149 Idaho at 465, 235 P.3d at 415. The evidence of flight was relevant to show a consciousness of guilt for the various crimes Passons committed, including the crimes committed the previous day. Though prejudicial to Passons, the evidence cannot be said to be unfairly so. The district court did not abuse its discretion by admitting the evidence.

### B. Motions for a Mistrial

In criminal cases, motions for mistrial are governed by I.C.R. 29.1. A "mistrial may be declared upon motion of the defendant, when there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, which is prejudicial to the

defendant and deprives the defendant of a fair trial." I.C.R. 29.1(a). Our standard for reviewing a district court's denial of a motion for mistrial is well established:

> [T]he question on appeal is not whether the trial judge reasonably exercised his discretion in light of circumstances existing when the mistrial motion was made. Rather, the question must be whether the event which precipitated the motion for mistrial represented reversible error when viewed in the context of the full record. Thus, where a motion for mistrial has been denied in a criminal case, the "abuse of discretion" standard is a misnomer. The standard, more accurately stated, is one of reversible error. Our focus is upon the continuing impact on the trial of the incident that triggered the mistrial motion. The trial judge's refusal to declare a mistrial will be disturbed only if that incident, viewed retrospectively, constituted reversible error.

*State v. Urquhart*, 105 Idaho 92, 95, 665 P.2d 1102, 1105 (Ct. App. 1983). Passons argues that he was deprived of a fair trial based on the juror's comments regarding his tattoos relating to repeated incarceration, and the officer's statement that Passons may have been the suspect of a robbery investigation.

During voir dire, the district court asked if anyone knew of a reason why they could not be fair and impartial. The following exchange between Juror 12 and the court ensued:

| | |
|---|---|
| Court: | How are you this morning? |
| [Juror 12:] | Pretty good, other than this is kind of embarrassing to say, but if he's a defendant, I work in a bar. He's already covered in tattoos. He's been in and out of jail more than I can count. Those aren't normal tattoos that people just get for decoration. I've already formed an opinion of him. I honestly don't think I can give him a fair trial. |
| Court: | Well, I don't know that I agree with your conclusions, but that's not important. I appreciate you offering that and you being -- |
| [Juror 12:] | I know about the difference between decorative and -- |
| Court: | That's quite all right. Thank you very much, [Juror 12]. Why don't you go ahead and step down and I will excuse you. |

After this exchange, defense counsel requested a sidebar, which was not transcribed. The court later noted defense counsel had made a motion for a mistrial based on Juror 12's comments. Defense counsel later inquired during voir dire:

> When we first started this morning--well, let me just ask it this way: Is anybody here going to say Mr. Passons is guilty because of the way he looks? It's America. It's okay to say so.
> Okay.

Defense counsel, with no responses, continued asking other questions.

Before the parties exercised the use of peremptory challenges, the district court addressed the motion for a mistrial. In reaching its decision, the court described Passons as being very presentable; noting he was wearing a long-sleeved shirt with a tie. The court observed that Passons has a large star tattoo on the upper right side of his forehead. The court described Passons as having tattoos above his collar line and underneath his chin. The court also believed he had tattoos on his hands.[3] Though acknowledging Juror 12 articulated what she believed the tattoos to mean, the district court concluded that the comments were not so extreme as to warrant a mistrial.

Passons also challenges the statement made by the testifying officer that she pursued a suspect of a robbery. During direct examination of the officer, the prosecutor asked her to describe what was going on during the pursuit, and the officer responded: "We were following a suspect from a robbery that occurred." Defense counsel objected, interrupting the officer's statement. The district court sustained the objection. Outside the presence of the jury, defense counsel again moved for a mistrial, arguing that the term robbery was inaccurate and inflammatory and that it was misconduct for the prosecutor to solicit the testimony. Defense counsel also argued cumulative error. The prosecutor argued the testimony was not solicited, and any prejudice could be eliminated by instructing the jury that there was no robbery. The district court found that the prosecutor's question did not solicit the response given, though the court recognized the testimony did come from law enforcement. The court concluded a mistrial was not necessary and the statement did not deprive Passons of a fair trial. The court instructed the jury that there was no robbery, there had been no robbery charged, and that Passons was not a suspect in a robbery.

The prejudice from these two statements does not rise to the level that would require a mistrial. When Juror 12 commented on Passons' tattoos, the district court indicated it was not sure it agreed with her conclusions. Further, as noted by the prosecutor during the discussion of whether to grant a mistrial, the foundation to support the juror's comments was questionable: "I don't know that she's claiming to have expertise in tattoo hierarchies as a bartender. I don't know jurors can take her seriously when that's her claim to expertise." Additionally, defense

---

[3]     During one of the asset protection associate's testimony, the associate identified Passons as having multiple tattoos on his arms.

9

counsel also inquired if the jury would rely on Passons' appearance in determining his guilt, which did not garner an affirmative response.[4]  As to the officer's testimony, the district court provided a curative instruction informing the jury that no robbery had taken place.[5]  It is unlikely that the jury would have understood the legal distinction between robbery, theft through violence or threat of violence, and Passons' conduct at the Post Falls store where he attempted to steal a television, threatened two employees with a knife, and then fled the store.  Considering the trial as a whole, we hold these statements were not so prejudicial as to require reversal.

## C.    Cumulative Error

Passons argues that the error in admitting evidence of other misconduct and the statements made by the juror and officer deprived him of his right to a fair trial.  Given that we found no error in the district court admitting evidence regarding Passons' conduct the day after the charged offenses, Passons has failed to show cumulative error.

### III.

### CONCLUSION

The district court properly admitted evidence relating to Passons' conduct the day after the charged offenses.  Passons has failed to show reversible error based on the juror and officer's comments.  Therefore, Passons' judgment of conviction for two counts of aggravated assault and one count of burglary is affirmed.

Chief Judge MELANSON and Judge GUTIERREZ **CONCUR.**

---

[4]    *See State v. Ellington*, 151 Idaho 53, 68-69, 253 P.3d 727, 742-43 (2011) (affirming the denial of a motion for mistrial where three prospective jurors indicated they believed the defendant to be guilty in part because the district court provided a limiting instruction and those jurors did not sit on the jury).

[5]    We presume that a jury follows a district court's instructions.  *See State v. Kilby*, 130 Idaho 747, 751, 947 P.2d 420, 424 (Ct. App. 1997); *State v. Hudson*, 129 Idaho 478, 481, 927 P.2d 451, 454 (Ct. App. 1996).